# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

EZEKIEL DAVIS,         )
                                 )
        Plaintiff,        )
                                 )
v.                          )          Case No. CIV-13-1174-HE
                                 )
CORRECTIONS CORPORATION   )
OF AMERICA et al.,            )
                                 )
        Defendants.     )

## REPORT AND RECOMMENDATION

Plaintiff Ezekiel Davis, appearing pro se and proceeding *in forma pauperis*, brings this action under 42 U.S.C § 1983, alleging violations of his federal constitutional rights. United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). The matter is now before the Court on Plaintiff's motion for preliminary injunctive relief (Doc. No. 2) and for initial screening pursuant to 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c).

Upon review of Mr. Davis' Complaint (Doc. No. 1), the undersigned concludes that Mr. Davis has not plausibly stated a claim under 42 U.S.C. § 1983 for an ongoing violation of the Eighth Amendment through the denial of medical care. The undersigned recommends that this claim be dismissed. Further, the undersigned recommends that Mr. Davis' request for preliminary injunctive relief, which is based on the above-referenced claim, be denied.

## BACKGROUND

Mr. Davis is a state prisoner incarcerated at Cimarron Correctional Facility ("CCF"), a private prison operated by Defendant Corrections Corporation of America ("CCA") in Cushing, Oklahoma. *See* Compl., Doc. No. 1, at 1.[1]

### A. *Filing of Complaint and Request for Preliminary Injunctive Relief*

On November 1, 2013, Mr. Davis filed his Complaint, along with a "Memorandum of Law in Support of Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction" ("Pl.'s Mem.," Doc. No. 2) and a "Declaration in Support of Plaintiff's Motion for a Temporary Restraining Order and a Preliminary Injunction" ("Pl.'s Decl.," Doc. No. 3). Although Mr. Davis did not file a separate motion for injunctive relief as required by civil procedural rules, the undersigned nevertheless construes the Memorandum (Doc. No. 2) as such a motion. *See* Fed. R. Civ. P. 7(b); LCvR 7.1(c), (m); *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991) (stating rule of liberal construction "applies to all proceedings involving a pro se litigant").

In support of certain statements made in his Memorandum, Mr. Davis cites evidentiary materials, including video recordings. *See, e.g.*, Pl.'s Mem. at 2-3. Initially, Mr. Davis did not submit any such materials. On June 13, 2014, however, Mr. Davis submitted a collection of documents as exhibits (Doc. Nos. 51-1 to 51-10), along with copies of his Memorandum and Declaration (Doc. Nos. 51, 52). These latter two

---

[1] Citations to documents filed with the Court use the page numbers assigned by the Court's electronic filing system. When quoting documents filed by Mr. Davis, the undersigned has occasionally altered capitalization to improve readability.

submissions appear to be photocopies of the original documents that were filed with the Court (Doc. Nos. 2, 3) and contain no substantive differences from the originals. Mr. Davis has not to date submitted any video for the Court's consideration.

On July 3, 2014, Defendants CCA, Chad Miller, Chief Hilligoss, Lieutenant Battles, Officer Miller, Sergeant Stokes, Counselor Gibson, and C.O. Shiplett responded in opposition (Doc. No. 60) to Mr. Davis' request for preliminary injunctive relief.[2] It does not appear that the remaining Defendants, who have yet to be served with process in this lawsuit, were served with any notice of Mr. Davis' motion.[3] *See* Certificate of Mailing, Doc. No. 51-12; *see also* Fed. R. Civ. P. 65(a)(1), (b)(1). On July 16, 2014, Mr.

---

[2] The undersigned accepts these Defendants' response as timely in light of Mr. Davis' late submission of exhibits.

[3] It is not entirely clear against whom Mr. Davis is requesting that an order for injunctive relief be issued. To the extent such request applies to any of the unserved Defendants, and Mr. Davis is requesting a *preliminary injunction*, the request would fail because Mr. Davis has not shown that he notified those Defendants. *See* Fed. R. Civ. P. 65(a)(1) ("The court may issue a preliminary injunction only on notice to the adverse party."). To the extent such request applies to any of the unserved Defendants, and Mr. Davis is seeking a *temporary restraining order*, the request would fail because Mr. Davis has not presented the documentation required by the rule to excuse notice. *See* Fed. R. Civ. P. 65(b)(1) (requiring movant for ex parte temporary restraining order to present certain documents showing (1) "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," and (2) "any efforts made to give notice and the reasons why it should not be required"); Pl's Mem.; Pl.'s Decl.; Certificate of Mailing; *see also Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (requiring all litigants, including those proceeding pro se, to follow applicable procedural rules).

Davis filed a Reply to Defendants' response, in which he presents additional allegations ("Pl.'s Reply," Doc. No. 67).[4]

### B. Summary of Pertinent Allegations in the Complaint

In his Complaint, Mr. Davis states that in August 2013, he declined to settle a separate civil action involving CCA. *See* Compl. at 2, 9; *see also* Pl.'s Mem. at 2, 3, 8; Pl.'s Decl. at 3.[5] Mr. Davis asserts that this decision led to certain retaliatory actions by CCA employees in September 2013. *See* Compl. at 2, 9, 10; *see also* Pl.'s Mem. at 2; Pl.'s Decl. at 3. Mr. Davis further asserts that certain CCF staff members are related to the facility's warden and that "a lot of" CCF staff members are related to each other. *See* Compl. at 13; *see also* Pl.'s Mem. at 2-5, 8, 11. Mr. Davis then asserts that, based on these alleged familial relationships, CCF staff members are seeking to "protect each other" by "maintaining a code of silence" as to the events he describes. *See* Compl. at 14; *see also* Pl.'s Mem. at 8. Finally, Mr. Davis asserts that CCF staff members are insufficiently trained. *See* Compl. at 1, 8, 11, 12-13; *see also* Pl.'s Mem. at 6, 8, 10, 12.

---

[4] This Reply was not timely filed. *See* LCvR 7.1(i) (permitting reply "within 7 days after the date the response was filed"). Nevertheless, in the interest of providing full consideration of Mr. Davis' claims for preliminary injunctive relief, the undersigned addresses certain allegations in this filing, including allegations that were not presented in Mr. Davis' other filings regarding his request for preliminary injunctive relief or in his Complaint. Based on the undersigned's ultimate recommendation that Mr. Davis be denied preliminary injunctive relief, Defendants are not prejudiced by this consideration. Further, in addressing the sufficiency of certain claims in Mr. Davis' Complaint, only the allegations contained therein have been considered.

[5] Plaintiff cites a civil action in the United States District Court for the Eastern District of Oklahoma: *Davis v. Jones*, No. CIV-09-466-RAW-SPS (E.D. Okla. filed Nov. 30, 2009). The action was dismissed with prejudice on March 17, 2014, upon stipulation by all parties.

More specifically, Mr. Davis alleges that on September 3, 2013, Counselor Gibson and C.O. Miller—who "is related to" Warden Chad Miller—moved an inmate with known mental health issues, Mr. Burton, from a mental health observation cell into Mr. Davis' cell. *See* Compl. at 2, 6, 13; *see also* Pl.'s Mem. at 2, 6, 8. Mr. Davis found Mr. Burton's behavior to be inappropriate. *See* Compl. at 2, 6; *see also* Pl.'s Mem. at 2. Mr. Davis alleges that he twice attempted to address the matter with Mr. Burton who, on both occasions, "hit[] [Mr. Davis] in the face and body several times." *See* Compl. at 6; *see also* Pl.'s Mem. at 2.

Mr. Davis states that he communicated to various CCF staff members, including Lieutenant Battles on September 5, 2013, that Mr. Burton should be removed from the cell. *See* Compl. at 6, 8; *see also* Pl.'s Mem. at 2-3. Mr. Davis asserts, however, that because his conversation could be overheard in adjacent cells through the connecting ventilation system, he was unable to communicate freely about Mr. Burton with Lieutenant Battles "for fear of being labeled a snitch." *See* Compl. at 6, 8 (emphasis omitted); *see also* Pl.'s Mem. at 3, 10. Mr. Davis alleges that Lieutenant Battles declined to remove Mr. Burton from the cell, despite witnessing threatening behavior by Mr. Burton toward Mr. Davis. *See* Compl. at 8; *see also* Pl.'s Mem. at 3, 10.

Mr. Davis then alleges that he complained about his circumstances to Warden Miller by filing a "5-1C Form Incident Statement," in connection with a visit from Warden Miller to Mr. Davis' cell. *See* Compl. at 5, 9; *see also* Pl.'s Decl. at 3; Pl.'s Mem. at 3, 8, 10. On September 6, 2013, Mr. Burton was removed from Mr. Davis' cell by Mrs. Evans, a staff member in the mental health unit, who allegedly explained that

Mr. Burton should never have been removed from mental health observation. *See* Compl. at 12, 13; Pl.'s Mem. at 6, 10. Mr. Davis thus asserts that Mr. Burton was placed in his cell only in retaliation for Mr. Davis not settling his separate civil action against CCA. *See* Compl. at 9; *see also* Pl.'s Mem. at 2, 3.

Four days later, Mr. Davis submitted a "sick call slip" to Nurse Starnes. *See* Compl. at 7; *see also* Pl.'s Mem. at 3. Mr. Davis "believe[s] Nurse Starnes showed [his] sick call slip to Lt. Battles and Sgt. Stokes" and this led to a plot among CCF staff members to retaliate against Mr. Davis for declining to settle the separate civil litigation against CCA and for his complaint to Warden Miller via the "5-1C Incident Statement." *See* Compl. at 10, 14-15; *see also* Pl.'s Mem. at 6-7, 8. Mr. Davis asserts that the staff members plotted to retaliate against him physically in an area where no cameras were present, using the pretense of a medical appointment to remove Mr. Davis from his cell. *See* Compl. at 10, 11, 14-15; *see also* Pl.'s Mem. at 7, 10-11.

Specifically, Mr. Davis contends that Sergeant Stokes, after telling Mr. Davis that he would be taken to the doctor, handcuffed him and removed him from his cell. *See* Compl. at 2, 7; *see also* Pl.'s Mem. at 3. Despite allegedly having requested an appointment with the doctor on his sick call slip, Mr. Davis states that he was taken instead to Nurse Starnes at the nurses' station, where no permanent cameras were present. *See* Compl. at 2, 5, 7; *see also* Pl.'s Mem. at 3-4, 6-7; Pl.'s Decl. at 3. Nurse Starnes examined Mr. Davis' ear and assessed that Mr. Davis had a perforated eardrum. Compl. at 7; *see also* Pl.'s Mem. at 4. Mr. Davis states that his visit with Nurse Starnes was then interrupted by Sergeant Stokes, who physically removed Mr. Davis from the

examination. *See* Compl. at 9; *see also* Pl.'s Mem. at 4. Mr. Davis asserts, among other things, that without provocation Sergeant Stokes and C.O. Shiplett then forced the handcuffed Mr. Davis against "the bars." Compl. at 9, 15; Pl.'s Mem. at 4. Mr. Davis further asserts that Lieutenant Battles instructed Sergeant Stokes to slam Mr. Davis to the floor if he moved. *See* Compl. at 10, 14; *see also* Pl.'s Mem. at 4. Mr. Davis alleges that Sergeant Stokes and C.O. Shiplett then "twisted both [his] wrist[s], and Sgt. Stokes slammed [him] face first to the concrete floor." Compl. at 10; *see also* Pl.'s Mem. at 4. Mr. Davis states that he was "dazzied and could *not* hear or see, or move [his] limbs."[6] Compl. at 5; *see also id.* at 16 (asserting he was "knocked dizzy"); Pl.'s Mem. at 4-5. Mr. Davis then alleges that Sergeant Stokes and C.O. Shiplett forced him to sit in a chair, while Nurse Starnes again examined him. *See* Compl. at 5, 11; Pl.'s Mem. at 5.

Mr. Davis contends that he has been denied medical care—or at least "proper" medical care—for injuries sustained during the above-described events. *See* Compl. at 11; *see also* Pl.'s Mem. at 7, 9, 12; Pl.'s Decl. at 1. Mr. Davis appears to attribute this deprivation, in part, to CCA's alleged "business model to cut cost[s]," and he supports this contention by alleging that CCA employs only "one doctor for almost 1,400 inmate[s]" at CCF.[7] *See* Compl. at 12. Mr. Davis nevertheless admits that he "was seen

---

[6] It is unclear whether Mr. Davis, in using the term "dazzied," meant to state that he was "dizzied" or "dazed" or "dazzled." Resolving this discrepancy, however, is unnecessary for analysis of Mr. Davis' claims that are addressed in this Report and Recommendation.

[7] Mr. Davis also alleges that CCA failed to train certain employees, including some who are or were responsible for providing medical care. *See* Compl. at 12-13. These allegations relate to the alleged interactions and altercations involving Mr. Burton and CCF staff members but do not implicate the actions of the CCF doctor. *See id.* at 12-13.

by [the] doctor" but asserts that the doctor "did not provide treatment for [his] wrist injury and would not send [him] to a[n] outside doctor or specialist to get treatment for [his] neck and back pain and re-injury from [the] incident on Sept. 10, 2013." Compl. at 17. Mr. Davis asserts that he is experiencing certain ongoing symptoms:

> I get dizzy when I stand[.] I have headaches[.] My eyes are sensitive to bright lights[.] My wrist[s] hurt from [the] wrist bone on both hands to the tips of my pinkies and thumbs[.] My back and neck hurt[ .] I cannot sleep, s[i]t or stand for long periods of time.

Compl. at 11; *see also* Pl.'s Mem. at 5. Among other forms of relief, Mr. Davis seeks injunctive relief requiring him "to be seen by [an] outside back, hand and head (concussion) doctor" and "to be transferred after [being] seen by an outside doctor back to [an Oklahoma Department of Corrections] facility." *See* Compl. at 20; *see also id.* at 11 (stating he "would like to see a[n] outside doctor to assess [his] injuries").

*C. Mr. Davis' Requests for Preliminary Injunctive Relief*

As noted, Mr. Davis is also seeking preliminary injunctive relief. In support of this request, Mr. Davis again alleges that he has ongoing symptoms: "I have constant handache, sensitivity to bright lights[,] and I believe that I have a concussion[.] [M]y neck and back [are] hurt[,] and I cannot sleep on one side without my arms and legs going numb. I cannot sit or stan[d] for long periods of time."[8] *See* Pl.'s Mem. at 5. Specifically, Mr. Davis is seeking a court order "to ensure that [he is] give[n] proper

---

[8] Because Mr. Davis alleges that his hands and head were both injured, it is unclear whether Mr. Davis intended to state that he has a constant "headache" or, as written, a constant "handache." Nevertheless, this discrepancy need not be resolved to analyze Mr. Davis' claims for preliminary injunctive relief.

medical attention and seen by a[n] outside hand, head and back specialist for the injuries [he] sustained in these t[w]o incidents."  Pl.'s Decl. at 1.

In a request not clearly related to his medical care, Mr. Davis also seeks "to be tran[s]ferred to a different facility to prevent . . . retaliation or harassment by the Defendants, their successors, agents or employees."  *See* Proposed Order, Doc. No. 51-11, at 1; Pl.'s Mem. at 2 (stating the "order is requested to ensure that the Defendants cease harassing, retaliating and using unnecessary force against [him]").  Finally, Mr. Davis requests a hearing on whether he is entitled to preliminary injunctive relief.  *See* Pl.'s Mem. at 2, 9, 11.

Mr. Davis' Memorandum in support of his request for preliminary injunctive relief generally contains factual allegations that parallel those in his Complaint.  However, in his Memorandum, Mr. Davis elaborates on his efforts to be seen by an outside specialist and his treatment by the CCF doctor.  On September 11, 2013 (according to the date on the document), Mr. Davis submitted a copy of an Offender Grievance Report Form, hand-labeled "Emergency and Sensitive," in which he seeks outside or specialized medical care.  *See* Pl.'s Mem. Ex. 9, Doc. No. 51-9; Pl.'s Mem. at 5.  This was one day after Mr. Davis' alleged physical altercation with CCF staff members and prior to his treatment by the CCF doctor.  On September 18, 2013, Mr. Davis "was seen by Doctor Payne (Paine)" who "only gave [him] some kind of medication and ordered []x-rays." *See* Pl.'s Mem. at 5.  Mr. Davis alleges that he "told Doctor Payne (Paine) that [he] believe[s] [his] muscles and nerves need to be checked and not just [his] bone, and that [he] would like to see a[n] outside specialist."  Pl.'s Mem. at 5.  Mr. Davis states that

"[the doctor] said CCA/CCF don't like doing that because it's costly[,] and if it's not an emergency[,] it's difficult to get approved."  Pl.'s Mem. at 5.

In his reply brief filed on July 16, 2014, regarding his request for preliminary injunctive relief, Mr. Davis reiterates that he "has been suffering" and presents allegations beyond those in his Complaint and prior filings on the matter.  *See* Pl.'s Reply at 1.  For instance, Mr. Davis contends that he has not seen a doctor since his September 18, 2013 visit with Dr. Payne, when he received a prescription for medication that "did not help" and "did not work."  Pl.'s Reply at 1, 3.  Mr. Davis further contends, however, that Dr. Payne is not qualified to treat him because "Dr. Payne is not a back and neck doctor," and he thus reurges his request to receive outside or specialized care.  Pl.'s Reply at 1-3 (capitalization altered).

Mr. Davis alleges that he has submitted "several 'sick call slips,'" and he included nine such documents as exhibits—each titled "Request for Health Services."  *See* Pl.'s Reply at 3; Pl.'s Reply Exs. 1-9, Doc. Nos. 67-1 to 67-9.  Three of the Requests pre-date Mr. Davis' visit with Dr. Payne.  *See* Pl.'s Reply Exs. 7-9, Doc. Nos. 67-7, 67-8, 67-9.  The two remaining Requests from 2013 both appear related to his claims.  *See* Pl.'s Reply Ex. 6, Doc. No. 67-6 (stating "new back medication was suppose[d] to be order[ed] for me it's been almost two weeks" and "I need to see Doctor Paine concerning my wrist injury"); *id.* Ex. 5, Doc. No. 67-5 (requesting to see doctor "about my back pain and not being able to sleep").  The next Request was submitted nearly five months later and appears unrelated.  *See* Pl.'s Reply Ex 4., Doc. No. 67-4 (stating he is not receiving "all of [his] medication," including "Benidrill [sic] 100 mg").  The remaining Requests, dated

May 29, 2014, June 4, 2014, and June 25, 2014, respectively, were submitted over two months after the unrelated Request, with each alleging back and neck pain that causes numbness and sleep disruptions. *See* Pl.'s Reply Exs. 3, 2, 1, Doc. Nos. 67-3, 67-2, 67-1. Outside or specialized care is sought only in the June 4, 2014 Request—a request submitted over seven months after Mr. Davis filed his Complaint. *See* Pl.'s Reply Ex. 2, Doc. No. 67-2.

Mr. Davis alleges that for each Request submitted, he was only seen by a nurse through his cell door. *See* Pl.'s Reply at 3; *see also* Pl.'s Reply Exs. 1-9, Doc. Nos. 67-1 to 67-9. According to the allegations in his Complaint, however, such a response is standard: "usually the nurses . . . read the sick call [slip] and see there[']s nothing they can do, stop by the cell and ask if I'm still having the problem and set a date to see the doctor." Compl. at 11. Mr. Davis noted at the time he filed his Complaint, "I have several sick calls pending[,] scheduling me to see the doctor." Compl. at 10. In his Reply, Mr. Davis does not state whether any further appointments to see the doctor have been scheduled in accordance with the above-described procedure; nor does he discuss or offer evidence of having pursued any of his requests beyond the initial Requests for Health Services discussed above.[9]

---

[9] Mr. Davis also asserts in his Reply that he "need[s] to be seen by [an] outside specialist" to obtain evidence regarding "the nature and extent of injuries suffered" and to "acquire expert witnesses that are qualified to assess [his] injuries." Pl.'s Reply at 2, 4. Mr. Davis concurrently filed a motion presenting similar discovery concerns. *See* Pl.'s Mot., Doc. No. 68.

ANALYSIS

A. *Whether Mr. Davis Has Stated a Claim upon Which Relief May Be Granted for an Ongoing Violation of His Eighth Amendment Rights*

    1. The Court's Screening Obligation

The Court must review each complaint brought by a prisoner (a) with respect to prison conditions; or (b) who is proceeding *in forma pauperis*. *See* 42 U.S.C. § 1997e(c)(1); 28 U.S.C. § 1915(e)(2)(B). In such circumstances, the Court is required to dismiss a complaint or any portion of a complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B). In this Report and Recommendation, the undersigned focuses exclusively on whether Mr. Davis has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1983 for an ongoing violation of his Eighth Amendment right to be free from cruel and unusual punishment based on an alleged denial of medical care.

    2. General Legal Standards Applicable to Mr. Davis' Claim of an Ongoing Violation of His Eighth Amendment Rights

To state a claim upon which relief may be granted, procedural rules require a plaintiff's complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint fails to state such a claim when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.*

at 555 (citation and footnote omitted). Bare legal conclusions in a complaint are not assumed to be true; legal conclusions "must be supported by factual allegations" to state a claim upon which relief may be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

"[A] pro se plaintiff requires no special legal training to recount the facts surrounding his alleged injury, and he must provide such facts if the court is to determine whether he makes out a claim on which relief can be granted." *Hall*, 935 F.2d at 1110; *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (noting that although courts construe pro se pleadings liberally, courts "will not supply additional factual allegations to round out a plaintiff's complaint"). Whether a complaint contains sufficient facts to avoid dismissal is context-specific and is determined through a court's application of "judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *see also Gee v. Pacheco*, 627 F.3d 1178, 1184-85 (10th Cir. 2010) (discussing *Iqbal*); *Kay*, 500 F.3d at 1218 (indicating court uses same analysis for complaint's sufficiency whether performed sua sponte or pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege sufficient facts to plausibly show both a violation of a right secured by the Constitution or laws of the United States and that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). It is not sufficient to establish only that a federal right was violated. The plaintiff must allege facts to plausibly establish a causal connection between an alleged violation of a federal right and *each* defendant. *See Iqbal*, 556 U.S. at 676; *Pahls v. Thomas*, 718 F.3d 1210, 1225, 1226, 1228 (10th Cir. 2013). A

defendant cannot be vicariously liable under § 1983 for the acts of another; each defendant must be sufficiently connected to the violation. *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 768-69 (10th Cir. 2013).

By seeking injunctive relief in the form of an order for outside medical care, as well as by alleging that he has ongoing symptoms and that the CCF doctor has denied him certain medical care, Mr. Davis implies that his Eighth Amendment right to be free from cruel and unusual punishment is being violated. *See* Compl. at 11, 17, 20. As interpreted, the Eighth Amendment prohibits subjecting prisoners to the "unnecessary and wanton infliction of pain," which includes exhibiting "deliberate indifference to [their] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted). Establishing an Eighth Amendment violation based on deliberate indifference to a serious medical need involves an objective component and a subjective component. To meet the objective component, a plaintiff must allege facts to establish that the deprivation of rights is related to a serious medical need, i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation marks omitted). To this end, a prisoner's "[d]isagreement with a doctor's particular method of treatment, without more, does not [alone establish] an Eighth Amendment violation." *Gee*, 627 F.3d at 1192. To meet the subjective component, a plaintiff must allege facts to establish that the defendant "acted or failed to act despite his [or her] knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). A defendant's

negligence in diagnosing or treating a medical condition is insufficient to establish deliberate indifference. *See id.* at 835-40. Rather, the plaintiff must allege facts to establish that the defendant "consciously disregard[ed] a substantial risk of serious harm." *Id.* at 838-40 (internal quotation marks omitted); *see also Daniels v. Williams*, 474 U.S. 327, 329-30 (1986) (reiterating that although § 1983 contains no independent state-of-mind requirement, plaintiff must establish state of mind required to prove underlying constitutional violation).

3. <u>Whether Mr. Davis' Allegations Are Sufficient to Support His Claim of an Ongoing Eighth Amendment Violation</u>

As noted, for each alleged violation of his federal rights, Mr. Davis must allege facts to plausibly establish a causal connection between the violation and at least one defendant. *See Iqbal*, 556 U.S. at 676; *Pahls*, 718 F.3d at 1225, 1226, 1228. The CCF doctor is not a named defendant in this action, and, thus, his independent liability is not at issue. *See* Compl. at 1-4. Mr. Davis states that he is suing CCA "for constitutional violations due to policy" and accuses CCA of employing only "one doctor for almost 1,400 inmate[s]" as part of its "business model to cut cost[s]." *See* Compl. at 1, 12.

Because no other Defendant reasonably appears connected to Mr. Davis' claim for an ongoing violation of his Eighth Amendment rights, Mr. Davis must allege sufficient facts to plausibly establish the liability of CCA. To do so, Mr. Davis must plead three elements: (a) an official policy or custom, (b) causation, and (c) state of mind. Specifically, Mr. Davis first must identify an official policy or custom of CCA. *See Schneider*, 717 F.3d at 769-70; *see also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216

(10th Cir. 2003) (applying municipal liability standard in § 1983 suit against private entity acting under color of state law and discussing inapplicability of vicarious liability); *Phillips v. Tiona*, 508 F. App'x 737, 750 (10th Cir. 2013) (collecting § 1983 cases involving private prisons such as CCA). "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by [an authorized] policymaker, or deliberately indifferent training or supervision." *Schneider*, 717 F.3d at 770. Second, Mr. Davis must allege facts to establish that the referenced policy or custom either directly violated Mr. Davis' federal right(s) or was the "moving force" behind an employee's violation of Mr. Davis' federal right(s).[10] *See id.* Third, and finally, Mr. Davis must allege facts "to show that the policy was enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." *See id.* at 769, 770-71.

Mr. Davis does not expressly identify any CCA policy as a predicate for his claim against CCA; however, he generally asserts that CCA employs only one doctor at CCF and that it does so, and also denies prisoners treatment by outside medical specialists, in order "to cut cost." *See* Compl. at 12; *Schneider*, 717 F.3d at 769-70. The undersigned

---

[10] Because a municipality—or a private entity subject to the municipal liability standard—cannot be vicariously liable under § 1983 for the acts of an employee, "rigorous standards of culpability and causation must be applied" when a plaintiff claims that the municipality or private entity "has not directly inflicted an injury, but nonetheless has caused an employee to do so." *See Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 405 (1997); *Dubbs*, 336 F.3d at 1216.

assumes without deciding that such decisions could constitute official policies for purposes of § 1983 liability.[11]

Mr. Davis must next allege facts to establish causation—i.e., that at least one of the policies directly violated his Eighth Amendment right to be free from cruel and unusual punishment or was the moving force behind an employee's violation of that right. *See Schneider*, 717 F.3d at 770. Mr. Davis merely asserts that the above concerns cause "CCA employees [to] commit[] more constitutional violations." *See* Compl. at 12. This bare conclusion is insufficient. First, Mr. Davis does not allege facts from which it plausibly can be concluded that unavailability or inadequacy of the CCF doctor was the reason for the doctor's alleged failure to provide the requested treatment for Mr. Davis' wrist injury. *See* Compl. at 17. Nor does Mr. Davis allege facts supporting a plausible conclusion that a policy of avoiding external medical costs was the reason for the CCF doctor's failure to "send [Mr. Davis] to a[n] outside doctor or specialist to get treatment for [his] neck and back pain and re-injury from [the] incident on Sept. 10, 2013." *See id.* at 17.

Moreover, even if it is assumed that one of these concerns was a "moving force" behind the CCF doctor's conduct, Mr. Davis has not established that the conduct violated Mr. Davis' Eighth Amendment rights. *See Schneider*, 717 F.3d at 770 (requiring policy-

---

[11] Although Mr. Davis alleges that CCA failed to train certain CCF staff members, he does not include the CCF doctor in that group and otherwise does not connect any lack of training to the alleged ongoing denial of medical care. *See* Compl. at 12-13. Thus, Mr. Davis fails to allege sufficient facts to establish a CCA policy of inadequate training as a predicate for his claim of an ongoing violation of his Eighth Amendment rights.

connected underlying federal rights violation by employee for municipal liability to attach). With respect to Mr. Davis' assertions that the doctor did not treat his "wrist injury" and that his "wrist[s] hurt from [the] wrist bone on both hands to the tips of [his] pinkies and thumbs," Mr. Davis has not alleged sufficient facts to establish the subjective component of an Eighth Amendment violation—i.e., that the CCF doctor is consciously disregarding a substantial risk of serious harm to Mr. Davis.[12] *See* Compl. at 11, 17; *Farmer*, 511 U.S. at 838-40. Mr. Davis' conclusory assertions do not establish that the doctor is aware of Mr. Davis' alleged ongoing symptoms or, for that matter, distinguish the doctor's conduct from mere negligence in diagnosing or treating a medical condition. *See Farmer*, 511 U.S. at 835-40 (explaining that medical negligence alone is insufficient to establish the subjective component of an Eighth Amendment violation).

Similarly, with respect to Mr. Davis' assertion that the CCF doctor "would not send [him] to a[n] outside doctor or specialist to get treatment for [his] neck and back pain and re-injury from [the] incident on Sept. 10, 2013," Mr. Davis again does not allege sufficient facts to establish that the doctor is consciously disregarding a substantial risk of serious harm to Mr. Davis. *See* Compl. at 17; *Farmer*, 511 U.S. at 838-40. Among other things, Mr. Davis does not provide any details regarding the circumstances under which the doctor allegedly denied or is denying outside or specialized medical care for Mr.

---

[12] Mr. Davis' limited description of his alleged wrist injury also raises a substantial question as to whether the objective component of an Eighth Amendment violation—i.e., a serious medical need—has been established, and as to whether the remaining factor of the subjective component—i.e., a substantial risk of serious harm—has been shown. *See Sealock*, 218 F.3d at 1209-10; *Farmer*, 511 U.S. at 838-40, 842.

Davis. *See* Compl. at 17; *Gee*, 627 F.3d at 1187-88 (suggesting prisoner plaintiff must plead "sufficient facts to indicate the plausibility that the actions of which he complains were *not* reasonably related to legitimate penological interests"). The allegations of the Complaint are insufficient to establish that the CCF doctor is aware of Mr. Davis' remaining ongoing symptoms, and they do not distinguish the doctor's alleged conduct from mere negligence in diagnosing or treating a medical condition. *See* Compl. at 11, 17; *Farmer*, 511 U.S. at 838-40. Further, Mr. Davis offers no facts to justify his implied contention that a mere denial of outside or specialized care creates an ongoing violation of his Eighth Amendment rights. *See Iqbal*, 556 U.S. at 679; *Whitney*, 113 F.3d at 1173-74.

Having failed to establish that a CCA policy either is directly violating his Eighth Amendment rights or is the moving force behind an ongoing violation by an employee, Mr. Davis has failed to state a claim upon which relief may be granted insofar as his claim of an ongoing violation of his Eighth Amendment rights. Accordingly, this claim should be dismissed. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. § 1915(e)(2)(B)(ii).

4. <u>Opportunity to Amend</u>

It is possible that Mr. Davis could cure the deficiencies in his Eighth Amendment claim through additional allegations consistent with the discussion above or through the naming of additional defendants, or both. Therefore, the undersigned further recommends that the dismissal be without prejudice and that Mr. Davis be granted permission to file an amended complaint. *See* Fed. R. Civ. P. 15(a)(2).

*B. Whether Mr. Davis Is Entitled to Preliminary Injunctive Relief*

Preliminary injunctive relief is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The plaintiff must establish, among other factors, "that he is likely to succeed on the merits" and "that he is likely to suffer irreparable harm in the absence of preliminary relief."[13] *See id.* at 20.

Because injunctive relief sought in an action brought under 42 U.S.C. § 1983 is intended to remedy an ongoing violation of the plaintiff's federal rights, the plaintiff generally must establish such an ongoing violation to demonstrate that he is likely to succeed on the merits of his claims for injunctive relief as they appear in the complaint. *See* 42 U.S.C. § 1983; *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945) (requiring preliminary injunctive relief to be of same character as that which may be finally granted). To meet the "irreparable harm" requirement, the plaintiff must establish that an injury is both imminent and not theoretical. *See Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1189 (10th Cir. 2003). Such an injury must be beyond "merely serious or substantial" and, generally, one for which an adequate monetary remedy is unavailable. *See id.*; *Prairie Band of Potawatomi Indians v. Pierce*, 253 F.3d 1234, 1250 (10th Cir. 2001).

---

[13] Other factors a plaintiff must establish include "that the balance of equities tips in his favor" and "that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1226 (10th Cir. 2007) (listing factors).

1. <u>Mr. Davis' Request for Outside or Specialized Medical Care</u>

The undersigned has recommended that Mr. Davis' claims regarding an Eighth Amendment violation based on the alleged ongoing denial of medical care be dismissed for failure to state a claim upon which relief may be granted. Given this recommendation, the undersigned concludes that Mr. Davis is unable to establish that he is likely to succeed on the merits of this claim and is, thus, unable to clearly show that he is entitled to preliminary injunctive relief. *See Winter*, 555 U.S. 20, 22. Accordingly, the undersigned recommends that Mr. Davis' request for such relief in the form of an order for outside or specialized medical care (Doc. No. 2) be DENIED.

Although in light of this recommendation the undersigned need not consider whether Mr. Davis has otherwise met the criteria for preliminary injunctive relief, the undersigned further finds that Mr. Davis has failed to establish that he is likely to suffer irreparable harm in the absence of preliminary relief. *See Winter*, 555 U.S. at 20. This finding is sustained even upon consideration of the additional allegations in Mr. Davis' Reply, including his Requests for Health Services.

Mr. Davis appears to have submitted only six Requests for Health Services over a nine-month period after his visit with the CCF doctor. *See* Pl.'s Mem. at 5; Pl.'s Reply at 1, 3; Pl.'s Reply Exs. 1-9, Doc. Nos. 67-1 to 67-9. One of those Requests appears unrelated to Mr. Davis' claims in this case. Only the earliest of the Requests mentions a "wrist injury." *See* Pl.'s Reply Ex. 6, Doc. No. 67-6. Only one of the Requests— submitted over seven months after Mr. Davis filed his Complaint—sought outside or specialized medical care, and in a Request filed three weeks later, Mr. Davis sought only

"to see the doctor" regarding substantially the same alleged symptoms as in the earlier request for outside or specialized care.  *See* Pl.'s Reply Exs. 1-2, Doc. Nos. 67-2, 67-1. Further, Mr. Davis presents no allegations or evidence that he pursued any of his requests beyond these initial Requests for Health Services.  Such limited attempts over a relatively long period to seek outside, specialized medical care do not reasonably suggest that Mr. Davis is facing an imminent injury that is beyond merely serious or substantial absent such extraordinary care.

Finally, Mr. Davis suggests that, absent outside care, he faces discovery challenges that threaten irreparable harm to his ability to prove his injuries in this case. The undersigned has by separate Order addressed a motion by Mr. Davis requesting relief on such discovery issues (Doc. No. 68).  As stated more fully therein, Mr. Davis may obtain expert medical evaluations for evidentiary purposes at his own expense.

2. Mr. Davis' Request for a Transfer

As to Mr. Davis' request for a transfer to a different facility, he has similarly failed to establish that he faces irreparable harm absent such relief.  Mr. Davis states that such transfer is requested "to prevent . . . retaliation or harassment by the Defendants, their successors, agents or employees."  *See* Proposed Order, Doc. No. 51-11, at 1; Pl.'s Mem. at 2 (stating the "order is requested to ensure that the Defendants cease harassing, retaliating and using unnecessary force against [him]"); *see also* Compl. at 20 (requesting "to be transferred after [being] seen by an outside doctor back to [an Oklahoma Department of Corrections] facility").

Beyond conclusory statements, however, Mr. Davis does not present any factual allegations or evidence to support a reasonable conclusion that such alleged conduct is ongoing—much less to support a reasonable conclusion that the alleged conduct presents a non-theoretical threat of imminent injury that is beyond merely serious or substantial. *See* Pl.'s Mem.; Pl.'s Decl.; *see also* Fed. R. Civ. P. 7(b)(1)(B) (requiring requests for a court order to "state with particularity the grounds for seeking the order"). Thus, because Mr. Davis has not established that he is likely to suffer irreparable harm in the absence of this preliminary relief, he has failed to clearly show that he is entitled to such relief. *See Winter*, 555 U.S. 20, 22. Accordingly, the undersigned recommends that Mr. Davis' request for preliminary injunctive relief in the form of an order for his transfer to a different facility (Doc. No. 2) be DENIED.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that:

1. To the extent Mr. Davis is alleging an ongoing violation of his Eighth Amendment rights in his Complaint (Doc. No. 1), such claims should be dismissed without prejudice for failure to state a claim upon which relief may be granted, but Mr. Davis should be permitted to file an amended complaint to address the factual deficiencies identified; and

2. Mr. Davis' motion for preliminary injunctive relief (Doc. No. 2), including his request for a hearing on the matter, should be denied.

NOTICE OF RIGHT TO OBJECT

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by August 20, 2014, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation does not terminate the referral in the present case.

ENTERED this 30th day of July, 2014.

_____

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE