# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

EZEKIEL DAVIS,           )
                                      )

      Plaintiff,        )
                                        )

v.                           )          **Case No. CIV-13-1174-HE**
                                        )

**CORRECTIONS CORPORATION**    )
**OF AMERICA et al.,**            )
                                        )

      Defendants.     )

## AMENDED REPORT AND RECOMMENDATION

On September 30, 2015, the undersigned entered a Report and Recommendation in this case. This Amended Report and Recommendation supersedes and replaces that prior document in all respects.

Plaintiff Ezekiel Davis, a state prisoner appearing pro se and proceeding *in forma pauperis*, brings this action under 42 U.S.C § 1983, alleging violations of his federal constitutional rights. United States District Judge Joe Heaton has referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). The matter is now before the undersigned on multiple motions by the parties.

## I.      BACKGROUND

### A. Procedural History

On November 1, 2013, while incarcerated at Cimarron Correctional Facility ("CCF"), a private prison operated by Defendant Corrections Corporation of America ("CCA") in Cushing, Oklahoma, Plaintiff commenced this action by filing a Complaint.

*See* Compl., Doc. No. 1, at 1.[1]  Based upon a Report and Recommendation by the undersigned, Plaintiff's claims alleging ongoing violations of his Eighth Amendment rights were dismissed without prejudice, and Plaintiff was granted leave to file an amended complaint for the limited purpose of correcting factual deficiencies in those dismissed claims.  *See* R. & R., Doc. No. 78; Order of Sept. 22, 2014, Doc. No. 110.

On October 16, 2014, Plaintiff filed an Amended Complaint (Doc. No. 122).  The Amended Complaint is in substance largely copied from the Complaint but has the Complaint's eleventh page omitted and certain headings changed.  Plaintiff presents no new factual allegations and, thus, did not adequately and meaningfully correct the previously identified factual deficiencies.[2]  Accordingly, the Amended Complaint is not reasonably construed as raising any plausible claims of ongoing Eighth Amendment violations.  *See* R. & R.; Order of Sept. 22, 2014.

As to his remaining claims, Plaintiff sues CCA and twelve individual Defendants, all of whom are or were employees of CCA and working at CCF during the time relevant to this action: (1) Warden Chad Miller; (2) Lieutenant Battles; (3) Correctional Officer Miller; (4) Sergeant Stokes; (5) Counselor Gibson; (6) Correctional Officer Shiplett; (7) Chief Hilligoss; (8) Nurse Starnes; (9) Nurse Akers; (10) Nurse D. Davis; (11)

_____

[1] Citations to documents filed with the Court use the page numbers assigned by the Court's electronic filing system.  When quoting documents filed by Plaintiff, the undersigned has occasionally altered capitalization to improve readability.

[2] Plaintiff conceded that "he has taken out the medical claim because he did not believe he could correct the deficiencies" of his initial Eighth Amendment claims.  *See* Pl.'s Mot. Ext. of Time, Doc. No. 117, ¶ 2.

Correctional Officer Ferrell; and (12) Unit Manager Monday. *See* Am. Compl. at 1-2, 3-4.[3]

With the exception of Nurse D. Davis, who has not been served, Defendants have collectively moved for summary judgment. *See* Defs.' Mot. Summ. J., Doc. No. 128; Waiver of Service Returned Unexecuted, Doc. No. 100. Plaintiff has responded in opposition and filed a declaration under penalty of perjury, along with exhibits in support. *See* Pl.'s Resp. to Defs.' Mot. Summ. J., Doc. No. 134; Pl.'s Decl., Doc. No. 137; Pl.'s Decl. Exs., Doc. Nos. 137-1 to 137-11.[4] Defendants did not file a reply brief. Defendants' dispositive motion is addressed in the analysis below, along with other pending motions and matters before the Court.

---

[3] Plaintiff's spelling of certain Defendants' names has been inconsistent, and so the undersigned has generally based the spelling of those names upon record evidence of the proper spelling. *E.g.*, Waivers of Service, Doc. Nos. 71, 72, 99. Also, although Plaintiff identified certain Defendants as John Doe or Jane Doe in the initial Complaint, *see* Compl. at 4, Plaintiff provides names for those Defendants in his Amended Complaint. *See* Am. Compl. at 4. Because certain pages of the Amended Complaint are substantively identical to the Complaint, however, those Defendants continue to be identified as John or Jane Does in some places in the amended pleading. *See, e.g.*, Am. Compl. at 10, 11.

[4] Although Plaintiff's Response brief is not signed under penalty of perjury, *see* Pl.'s Resp. at 38, Plaintiff's Declaration appears intended to swear to the facts in both the Response and the Declaration itself, s*ee* Pl.'s Decl. at 1-2. Further, Plaintiff's Amended Complaint is signed under penalty of perjury. Am. Compl. at 20. Thus, the undersigned treats these filings as sworn statements for the purpose of summary judgment to the extent all of these documents present factual allegations based on Plaintiff's personal knowledge. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); Fed. R. Civ. P. 56(c)(4).

*B. Summary of Amended Complaint's Factual Allegations*

In his Amended Complaint, Plaintiff states that in August 2013 he declined to settle a separate civil lawsuit he had brought involving CCA: *Davis v. Jones*, No. CIV-09-466-RAW-SPS (E.D. Okla. filed Nov. 30, 2009).[5]  *See* Am. Compl. at 2, 9.  Plaintiff asserts that this decision led to certain retaliatory actions by CCA employees in September 2013.  *See* Am. Compl. at 2, 9, 10.  Plaintiff further asserts that certain CCF staff members are related to that facility's warden and that "a lot of" CCF staff members are related to each other.  *See* Am. Compl. at 12.  Plaintiff asserts that CCF staff members have a "strong code of silence" relevant to the events he describes.  *See* Am. Compl. at 12.  Plaintiff further asserts that CCF staff members are insufficiently trained and that CCF offers insufficient services to inmates.  *See* Am. Compl. at 11-12.  Finally, Plaintiff asserts that he was deprived of due process during a prison disciplinary proceeding due to his inability to obtain certain video evidence and to present CCF staff members as witnesses.  Am. Compl. at 15.

1. Count I

Plaintiff alleges that on September 3, 2013, Counselor Gibson and Correctional Officer Miller—who "is related to" Warden Chad Miller—moved an inmate with known mental health issues, Mr. Burton, from a mental health observation cell into Plaintiff's cell at CCF.  *See* Am. Compl. at 2, 6, 12.  Plaintiff alleges that on September 4 and 5, 2013, Mr. Burton masturbated in their shared cell in the presence of female CCF staff

---

[5] The lawsuit was dismissed with prejudice on March 17, 2014, upon stipulation by all parties.

members.  *See* Am. Compl. at 2, 6.   Plaintiff also alleges, "I was hit several times."  *See* Am. Compl. at 6; *see also* Am. Compl. at 8 (alleging that Mr. Burton "attacked" Plaintiff); Compl. at 6 (alleging that Plaintiff twice attempted to address the objectionable behavior by yelling at Mr. Burton who, on both occasions, "hit[] [Plaintiff] in the face and body several times").

Plaintiff states that on September 5, 2013, he told Lieutenant Battles that Mr. Burton should be removed from the cell.  Am. Compl. at 6, 8.  Plaintiff asserts, however, that because his conversation could be overheard in adjacent cells through the connecting ventilation system, he was unable to communicate freely about Mr. Burton with Lieutenant Battles "for fear of being labeled a snitch."  Am. Compl. at 6, 8 (emphasis omitted).  Plaintiff alleges that Lieutenant Battles declined to remove Mr. Burton from the cell, despite witnessing Mr. Burton "jump off his top bunk and square off with [Plaintiff]."  *See* Am. Compl. at 8.

Plaintiff alleges that he then complained to Warden Miller about his circumstances by filing a "5-1C Form Incident Statement," in connection with a visit from Warden Miller to Plaintiff's cell.  *See* Am. Compl. at 5, 9.  On September 6, 2013, Mr. Burton was removed from Plaintiff's cell by a staff member in the mental health unit who allegedly explained that Mr. Burton should never have been removed from mental health observation.  *See* Am. Compl. at 11, 12; Pl.'s Mem., Doc. No. 2, at 6, 10; Pl.'s Resp. to

Defs.' Mot. Summ. J. at 28.[6]  On these facts, Plaintiff asserts that Mr. Burton was placed in his cell as retaliation against Plaintiff's not having settled his separate lawsuit against CCA.  *See* Am. Compl. at 9.

2.  Count II

On September 10, 2013, Plaintiff submitted a "sick call slip" to Nurse Starnes. *See* Am. Compl. at 6.  Plaintiff "believe[s] Nurse Starnes showed [his] sick call slip to Lt. Battles and Sgt. Stokes," leading to a plot among CCF staff members to retaliate against Plaintiff for declining to settle the separate lawsuit against CCA and for his complaint to Warden Miller via the "5-1C Incident Statement."  *See* Am. Compl. at 10, 13-14. Plaintiff suggests that the staff members plotted to retaliate against him physically in an area where no cameras were present, using the pretense of a medical appointment to remove Plaintiff from his cell.  *See* Am. Compl. at 10, 13-14.

Specifically, Plaintiff contends that Sergeant Stokes, after telling Plaintiff that he would be taken to the doctor, handcuffed him and removed him from his cell.  *See* Am. Compl. at 2, 6.  Despite allegedly having requested an appointment with the doctor on his sick call slip, Plaintiff states that he was taken instead to Nurse Starnes at the nurses' station, where no permanent cameras were present.  *See* Am. Compl. at 2, 5, 6, 10.  Nurse Starnes examined Plaintiff's ear and assessed that Plaintiff had a perforated eardrum. Am. Compl. at 6.  Plaintiff states that his visit with Nurse Starnes was then interrupted by

---

[6] Plaintiff's assertion that Mr. Burton was removed from the cell on September 6, 2013, does not appear in the Amended Complaint but does appear in other filings by Plaintiff, including the cited memorandum that was filed contemporaneously with the Complaint and Plaintiff's response to Defendants' Motion for Summary Judgment.

Sergeant Stokes and Correctional Officer Shiplett, who physically removed Plaintiff from the examination. *See* Am. Compl. at 9. Plaintiff asserts, among other things, that without provocation Sergeant Stokes and C.O. Shiplett then forced the handcuffed Plaintiff "against the bars." Am. Compl. at 9, 14. Plaintiff further asserts that Lieutenant Battles instructed Sergeant Stokes to slam Plaintiff to the floor if he moved. *See* Am. Compl. at 10, 13. Plaintiff alleges that Sergeant Stokes and C.O. Shiplett then "twisted both [his] wrist[s], and Sgt. Stokes slammed [him] face first to the concrete floor." Am. Compl. at 10. Plaintiff states that he was "dazzied [sic] and could *not* hear or see, or move [his] limbs." Am. Compl. at 5. Plaintiff then alleges that Sergeant Stokes and C.O. Shiplett forced him to sit in a chair, while Nurse Starnes again examined him. *See* Am. Compl. at 5.

### 3. Count III

Plaintiff asserts that CCA is "liable for the training of staff [and] due to CCA's business model they cut cost and train their employees less resulting in constitutional violations." Am. Compl. at 7. More specifically, Plaintiff alleges that CCA provides limited services to prisoners and limited benefits to staff members to reduce expenses. Am. Compl. at 11. Plaintiff contends that such limitations "lead to higher levels of violence and CCA employees commit[] more constitutional violations." *Id.* Plaintiff asserts that it was a lack of training by CCA that led to Lieutenant Battles' alleged refusal "to follow [O]DOC policy and investigate the matter" of Plaintiff and Mr. Burton "not getting along." *Id.* Plaintiff also asserts, among other things, that "CCA failed to provide persons train[ed] in the medical field to provide adequate medical care," particularly

alleging that "Nurse Starnes said there was nothing he could do for me." *Id.* In sum, Plaintiff asserts that CCA contributed to the circumstances described in Counts I and II either through alleged training failures, its alleged policies, or simply by being the employer of the alleged bad actors. *See* Am. Compl. at 7-8.

### 4. Count IV

Plaintiff asserts that as to certain Defendants who allegedly violated Plaintiff's constitutional rights, Plaintiff "would like to press criminal charges." Am. Compl. at 13. Specifically, Plaintiff seeks "to press charges" for those Defendants' alleged assault and battery of Plaintiff. *See* Am. Compl. at 13-14 (citing Okla. Stat. tit. 21, §§ 641 (defining assault), 642 (defining battery)). Plaintiff states, "I am a layman in the law and do not know what all I need to do to have these charges filed." Am. Compl. at 14.

### 5. Count V

Plaintiff alleges that after the events of September 10, 2013, described in Count II, Plaintiff was confined in the segregated housing unit "for 28 days under false pretenses." Am. Compl. at 15. Plaintiff alleges that Lieutenant Battles issued "a false misconduct" to Plaintiff based on the September 10, 2013 events but Plaintiff "did *not* violate any written rules" on that date. *Id.* Plaintiff also alleges that Lieutenant Battles "deleted camera footage" relevant to Lieutenant Battles' conduct on September 10, 2013, which violated Plaintiff's procedural due process rights because he "was not allowed to call camera footage as evidence at his disciplinary hearing." *See id.* Plaintiff further alleges that "Lt.

Battles excluded Sgt. Stokes and C.O. Shiplett as witness[es] and all those present including the camera man." *Id.*[7]

## II.     ANALYSIS

### A. *Defendant Nurse D. Davis*

Before addressing Defendants' Motion for Summary Judgment, the undersigned addresses Plaintiff's failure to serve Nurse D. Davis, also identified as "Jane Doe Two." *See* Am. Compl. at 4, 10, 11; Order, Doc. No. 73, at 2-3; Waiver of Service Returned Unexecuted, Doc. No. 100; *supra* note 3.  Upon being granted some degree of assistance by the United States Marshals Service and additional time to accomplish service, Plaintiff was directed to have service effected upon Nurse Davis by September 19, 2014, or to show cause for his failure to do so by September 26, 2014.  Order, Doc. No. 73, at 5-6. On August 26, 2014, the United States Marshals Service filed a Process Receipt and Return form reflecting that a waiver of service that had been mailed to the address provided by Plaintiff for service upon Nurse Davis had been returned unexecuted because Nurse Davis was "no longer @ facility – unable to forward."  Waiver of Service Returned Unexecuted at 1, 3.  The docket reflects no further effort by Plaintiff to serve Nurse Davis and no attempt to show cause for the failure to serve this Defendant.

Notwithstanding Plaintiff's failure to show cause, the undersigned still must consider whether a permissive extension of time to complete service of process is

---

[7] Plaintiff later stated, however, that he "was *never* prosecuted for the alleged rule violation(s)" presented in the "false misconduct."  Pl.'s Resp. to Defs.' Mot. Summ. J. at 23-24; *see also* Pl.'s Decl. at 2.

warranted. *See Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995). The Tenth Circuit has noted that a permissive extension of time may be appropriate where "policy considerations might weigh in favor of granting a permissive extension of time." *Id.* at 842. Additionally, "[t]he district court should also take care to protect *pro se* plaintiffs from consequences of confusion or delay attending the resolution of an *in forma pauperis* petition." *Id.* at 842 n.8 (internal quotation marks omitted).

Here, the undersigned finds no policy considerations meriting additional time for service, and no prejudice to Plaintiff in the denial of such time. Nurse Davis is alleged to be "maintaining a code of silence" because she "knew [Plaintiff] had done nothing wrong" on September 10, 2013, but "stood by and did nothing" regarding the incidents described in Count II. *See* Am. Compl. at 4, 10. In the analysis that follows, the undersigned concludes that Plaintiff has not exhausted his administrative remedies as to any claim presented in Count II, entitling Defendants to summary judgment on such claims. Even if Nurse Davis were to be properly served, she ultimately would also be entitled to summary judgment based on Plaintiff's failure to exhaust available administrative remedies. *See infra* Part C.3. All claims against Nurse Davis should be dismissed without prejudice. *See* Fed. R. Civ. P. 4(m); *see, e.g.*, *Sena v. Wackenhut Corp.*, 3 F. App'x 858, 861 (10th Cir. 2001).

### B. *Defendants' Motion for Summary Judgment and Standard of Review*

As noted, with the exception of Nurse Davis, Defendants have collectively moved for summary judgment. In their Motion, Defendants raise the affirmative defense that Plaintiff failed to properly exhaust his available administrative remedies before filing this

lawsuit. *See* Defs.' Mot. Summ. J. at 8, 10-16, 20-33. Defendants alternatively contend that Plaintiff cannot establish any of the constitutional violations claimed in his Amended Complaint and that the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. *Id.* at 8, 16-20, 34-44.

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. After considering the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, the court is required to grant summary judgment when "'there is no genuine [dispute] as to any material fact and the movant is entitled to judgment as a matter of law.'" *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting Fed. R. Civ. P. 56(a)). Parties may establish the existence or nonexistence of a material disputed fact through:

- citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or
- demonstration "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A)-(B). Unsubstantiated allegations and inferences based on mere speculation or conjecture, however, are insufficient to establish a genuine dispute over a material fact. *Self v. Crum*, 439 F.3d 1227, 1230, 1235-36 (10th Cir. 2006).

The court does not "weigh the evidence and determine the truth of the matter" but instead "determine[s] whether there is a genuine issue for trial"—i.e., whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A defendant moving for summary judgment bears the burden of showing that the undisputed material facts require judgment as a matter of law in the defendant's favor. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A defendant seeking summary judgment on the basis of an affirmative defense must show that the undisputed material facts establish all of the elements of the defense. *See Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997). If the defendant meets this burden, the burden shifts to the plaintiff to cite evidentiary material that shows there is a genuine factual dispute as to one or more elements of the affirmative defense; absent the plaintiff meeting this burden, summary judgment should be granted in favor of the defendant. *Id.*

Finally, under Local Civil Rule 56.1(b), the moving party's brief must contain "a concise statement of material facts" that the movant contends are not genuinely disputed. If any such fact is not "specifically controverted" by the nonmoving party, that fact "may be deemed admitted for the purpose of summary judgment." LCvR 56.1(c).

### C. *Whether Defendants Are Entitled to Summary Judgment Based upon Plaintiff's Failure to Exhaust Available Administrative Remedies*

#### 1. Exhaustion of Administrative Remedies Under 42 U.S.C. § 1997e(a)

A prisoner may not bring a suit under 42 U.S.C. § 1983 regarding prison conditions until he or she has properly exhausted available administrative remedies. 42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 90, 93-103 (2006). Absent circumstances in which a prison official's action or inaction has prevented the prisoner from completing the process, a prisoner "who begins the grievance process but does not

complete it" has not properly exhausted his or her available administrative remedies.  *See Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010); *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (holding substantial compliance was insufficient for a prisoner to properly exhaust remedies).  To properly exhaust administrative remedies, a prisoner must "us[e] all steps that the agency holds out, and do[] so *properly* (so that the agency addresses the issues on the merits)."  *Ngo*, 548 U.S. at 90 (internal quotation marks omitted)).  A prisoner must exhaust these remedies "[e]ven where the 'available' remedies would appear to be futile at providing the kind of remedy sought."  *Jernigan*, 304 F.3d at 1032.

### 2. ODOC Offender Grievance Process (OP-090124)

The Oklahoma Department of Corrections ("ODOC") has an Offender Grievance Process (OP-090124) through which prisoners may seek resolution of complaints.  *See* Defs.' Mot. Summ. J. Ex. 3, Doc. No. 128-3 (OP-090124 (eff. Jan. 29, 2013)).[8]  Only "Grievable Issues" may be addressed through the Grievance Process, i.e., "issues regarding conditions of confinement, actions of staff, and incidents occurring within or under the authority and control of [O]DOC that have personally affected the offender making the complaint and for which a remedy may be allowed by the department or by

---

[8] In their "Statement of Uncontroverted Facts," Defendants cite and rely upon a version of OP-090124 that is attached as Exhibit 3 to their Motion, which has an effective date of January 29, 2013.  *See* Defs.' Mot. Summ. J. at 10-16; Doc. No. 128-3.  In his Response, Plaintiff does not dispute that this version of OP-090124 was in effect at CCA and applies to his claims in this matter.  Accordingly, the undersigned finds that there is no genuine dispute as to the applicability of OP-090124, as presented in Exhibit 3 to Defendants' Motion.  *See* Fed. R. Civ. P. 56(c); LCvR 56.1.

law." *See* OP-090124 § II.A.1. More specifically, grievable issues "must relate to one of the following categories: 1. Discrimination; 2. Classification; 3. Complaint Against Staff; 4. Conditions of Confinement; 5. Disciplinary Process; 6. Legal; 7. Medical; 8. Property; 9. Records/Sentence Administration[;] and/or 10. Religion." *Id.* § IV.A. Certain issues cannot be addressed through the Grievance Process:

1. Misconduct reports received through the department disciplinary procedures may not be appealed through the grievance process. Misconduct reports may only be appealed through the procedures referenced in OP-060125 entitled "Department Offender Disciplinary Procedures."

2. Grievances may not be submitted about matters that are in the course of litigation.

3. Requests for disciplinary action against staff will not be addressed through the grievance process.

4. Privately contracted facility property issues are not grievable.

*See id.* § II.B.

The Grievance Process first requires a prisoner to attempt an informal resolution of his or her complaint. The prisoner "must try to resolve the complaint by talking with . . . appropriate staff within three days of the incident." *Id.* § IV.B. If the issue is not resolved, the prisoner must state the problem "completely but briefly" on a Request to Staff, presenting "only one issue or incident," and submit that document to the appropriate staff member "within seven calendar days of the incident." *Id.* § IV.C.1-.3. The appropriate staff member "will attempt to resolve the issue" and "will respond in writing within ten working days of receipt to all 'Request to Staff' forms being used to attempt informal resolution." *Id.* § IV.C.4.

If the above informal efforts do not resolve the issue, a formal process exists through which prisoners may further seek resolution. The prisoner must first follow prescribed procedures to submit a formal Grievance to the reviewing authority—i.e., "[t]he facility head . . . where the incident occurred"—"within 15 calendar days of the incident, or the date of the response to the 'Request to Staff' form, whichever is later." *See id.* §§ I.E, V.A.1. "Only one issue or incident is allowed per grievance." *Id.* § V.A.4. The facility's reviewing authority is required to "screen the grievance" to ensure proper compliance with the procedural rules. *See id.* § VI.A.2.

> The reviewing authority will return unanswered any grievance that contain[s] any errors in the filing process and notify the offender to correct the errors within 10 calendar days of receipt of the notice to the reviewing authority. If the offender fails to correct the errors, the grievance will be returned unanswered and the offender will have waived/forfeited the opportunity to proceed in the grievance process.

*Id.* § VI.B.6.

If the issue remains unresolved after the reviewing authority has addressed it, the prisoner must follow prescribed procedures to "make a final appeal to the administrative review authority . . . within 15 calendar days of receipt of the reviewing authority's response or any amended response." *Id.* § VII.B. Only two grounds permit a prisoner to appeal the reviewing authority's "response" or "decision": (1) newly discovered evidence and (2) probable reversible error. *See id.* § VII.A. The administrative review authority— i.e., the ODOC director or his designee—may, among other actions, issue a final ruling that "conclude[s] the internal administrative remedy available to the offender." *Id.* §§ I.F, VII.D.1. The administrative review authority may also "return . . . grievance appeals

unanswered when they contain more than one issue or when they fail to be filed in accordance with this procedure." *Id.* § VII.B.1.e; *see also id.* § VII.B.5. If a grievance appeal is returned unanswered, the prisoner "will be given one opportunity to correct any errors"; the corrected appeal "must be received by the Administrative Review Authority within 20 calendar days of the time the offender is notified of improper filing." *Id.* § VII.B.1.e. A failure to correct the error(s) will result in the appeal being again returned unanswered, and the prisoner "will have waived/forfeited the opportunity to proceed in the grievance process." *Id.*

Under the Grievance Process, a prisoner may also initially bypass the process of informal resolution if his or her complaint is of an emergency or sensitive nature. *Id.* § VIII. An "emergency" grievance must contain factual allegations indicative of "irreparable harm or personal injury" that "the grievance process will be unable to address in a timely preventive manner," and a "sensitive" grievance must contain factual allegations reflecting that the issue raised involves "misconduct by a staff member who either directly supervises the offender or is the reviewing authority where the offender is assigned." *Id.* § VIII.A.1, .2. If the reviewing authority determines the grievance not to be of an emergency or sensitive nature, the grievance is returned to the prisoner, and the prisoner is notified that he or she must follow "the standard grievance process." *Id.* § VIII.C.

3. Plaintiff's Efforts to Exhaust Administrative Remedies for His Claims Against Defendants

Defendants assert that CCF and ODOC grievance records for Plaintiff, submitted as Exhibits 6 through 8 to Defendants' Motion for Summary Judgment, "demonstrate that though Plaintiff was a prolific grievance filer, he never even once properly completed the grievance process as to any claim he has brought forward to the Court." Defs.' Mot. Summ. J. at 23-24 (emphasis omitted); *see also id.* at 32-33.[9] In response, Plaintiff asserts, as discussed below, that he could not properly complete the grievance process because prison officials made that process unavailable to him. Pl.'s Resp. to Defs.' Mot. Summ. J. at 10-13.

As an initial matter, Plaintiff in addition to other arguments addressed below asserts that, based upon his complaints in the form of 5-1C Incident Statements, an "in house investigation" was conducted at CCF regarding certain circumstances alleged in Plaintiff's pleadings and that this investigation sufficiently put CCF on notice of Plaintiff's complaints, and gave Defendants the opportunity to address his complaints, such that he should not separately be required to have exhausted his available administrative remedies through the Grievance Process. Pl.'s Resp. to Defs.' Mot. Summ. J. at 11 (¶ 8). Providing notice to CCF of Plaintiff's complaints, however, does not excuse Plaintiff from complying with the Grievance Process. Plaintiff presents no argument regarding how the alleged investigation, which was conducted only at the

---

[9] Plaintiff does not dispute, and the undersigned assumes, that the CCF and ODOC grievance records filed by Defendants are authentic and are the complete record for the time period at issue. *See* Fed. R. Civ. P. 56(c); LCvR 56.1.

facility level, provided ODOC with an opportunity to address and remedy Plaintiff's issues before he filed this lawsuit, as would generally be provided through Plaintiff's use of the Grievance Process. Any decision by prison authorities to conduct an internal investigation that is made separately and apart from an inmate's participation in the Grievance Process is not a substitute for that process. *Cf. Pemberton v. Patton*, No. CIV-14-129-D, 2015 WL 1638638, at *5 (W.D. Okla. Apr. 13, 2015) (dismissing § 1983 claim for nonexhaustion of administrative remedies where plaintiff had pursued his compliant through prison's disciplinary channels rather than by seeking administrative relief), *appeal filed*, No. 15-6089 (10th Cir. filed May 14, 2015); *Marshall v. Lee*, 529 F. App'x 898, 899-900 (10th Cir. 2013) (affirming dismissal under PLRA of § 1983 action for failure to exhaust administrative remedies on claims of retaliation and denial of due process during prison misconduct proceedings). The investigation would not have required Plaintiff to properly use all steps prescribed by ODOC to ensure that ODOC addressed the relevant issues on the merits. *See Ngo*, 548 U.S. at 90. Because these other efforts by Plaintiff do not suffice to meet the requirement of mandatory exhaustion under the PLRA, the undersigned proceeds to consider whether Plaintiff properly exhausted available administrative remedies through the ODOC Grievance Process.

Plaintiff's claims in his Amended Complaint pertain to events that allegedly occurred at CCF during September 2013, and Plaintiff filed this lawsuit on November 1, 2013. It is undisputed that Plaintiff submitted ten total grievances during the period between September 1, 2013, and October 31, 2013. *See* Defs.' Mot. Summ. J. at 11-16, 24-31; Pl.'s Resp. to Defs.' Mot. Summ. J. at 10-12, 15-25. It is also undisputed that two

of those grievances, Grievance Nos. 13-182 and 13-190, were unrelated to Plaintiff's claims in this lawsuit. Defs.' Mot. Summ. J. at 25, 26; Pl.'s Resp. to Defs.' Mot. Summ. J. at 16, 21. The remaining eight grievances are addressed below.

      a. Grievance Nos. 13-202, 13-209, 13-210, and 13-219

Four of the eight grievances—Nos. 13-202, 13-209, 13-210, and 13-219—were returned to Plaintiff unanswered by the CCF reviewing authority for various reasons. Doc. No. 128-8 at 11, 17, 24, 30. In each instance, Plaintiff appealed the reviewing authority's actions to the ODOC administrative review authority, and the appeals were returned—with an opportunity for corrections—on the basis of procedural errors. Doc. No. 128-10 at 3, 15, 19, 31. As detailed below, Plaintiff filed this lawsuit before completing that process as to any of these four grievances.

Plaintiff appealed Grievance Nos. 13-209 and 13-210 to the administrative review authority on October 18, 2013, submitting the two appeals together in the same envelope (along with an appeal of Grievance No. 13-182, which is unrelated to the claims of this suit), as well as a letter stating that he had done so due to his "indigent status" and because he had found no rule in the Grievance Process prohibiting such submissions. Doc. No. 128-10 at 15-17, 19-21; Pl.'s Resp. to Defs.' Mot. Summ. J. at 12, 24. Those appeals were received by the administrative review authority on October 23, 2013, and were returned unanswered based upon OP-090124 § VII.B.1.d, which requires that each grievance appeal "be submitted in a separate envelope and mailed through the U.S. Postal Service." *See* Doc. No. 128-10 at 14; Doc. 128-8 at 16, 23; OP-090124 § VII.B.1.d; *see also id.* §§ VII.B.1.e, VII.B.5. The administrative review authority stated that Plaintiff

would be permitted to resubmit the appeals within ten days of his receipt of the form that returned the appeals unanswered. *See* Doc. No. 128-8 at 16, 23; *see also* OP-090124 § VII.B.1.e (providing 20 calendar days from receipt of return form to resubmission). Plaintiff received the response from the administrative review authority on October 30, 2013. Doc. No. 128-8 at 16, 23. Plaintiff filed this lawsuit on November 1, 2013, before attempting to correct his admitted error in these appeals and without providing the administrative review authority an opportunity to respond to such corrections. *See* Compl. at 1; Doc. No. 128-10 at 28. Because further steps remained to be taken in the grievance process, Plaintiff's filing of this lawsuit was premature with regard to the complaints made in Grievance Nos. 13-209 and 13-210: Plaintiff was required to, but did not, properly complete those additional steps before filing claims in federal court. *See Ngo*, 548 U.S. at 90; *Little*, 607 F.3d at 1250; *Jernigan*, 304 F.3d at 1032.

Plaintiff submitted appeals of Grievance Nos. 13-202 and 13-219 to the administrative review authority on October 28, 2013. *See* Doc. No. 128-10 at 3-4, 31-32. The grievance appeals were received by the administrative review authority on October 30, 2013, and were returned unanswered because Plaintiff allegedly submitted the two appeals together in a single envelope. Doc. No. 128-10 at 2, 4, 30, 32; *see* OP-090124 § VII.B.1.d. The administrative review authority stated that Plaintiff would be permitted to resubmit the appeals within ten days of his receipt of the form that returned the appeals unanswered. *See* Doc. No. 128-10 at 2, 30; OP-090124 § VII.B.1.e. Plaintiff received the return form or forms on November 7, 2013, after he had already filed this lawsuit. *See* Doc. No. 128-8 at 10, 29. Plaintiff therefore prematurely filed this lawsuit before

receiving any response from the administrative review authority regarding his appeals of Grievance Nos. 13-202 and 13-219 and, thus, before correcting his appeals to the administrative review authority. Because additional prescribed steps in ODOC's grievance process remained available to Plaintiff, he was required to properly follow that process before seeking relief in this Court. *See Ngo*, 548 U.S. at 90; *Little*, 607 F.3d at 1250; *Jernigan*, 304 F.3d at 1032.

Plaintiff asserts that the Grievance Process for Grievance Nos. 13-202, 13-209, and 13-219 was made unavailable by CCF's reviewing authority's actions. *See* Pl.'s Resp. to Defs.' Mot. Summ. J. at 11-12, 23, 25. Plaintiff does not argue, however, that the procedure for appealing the reviewing authority's decision was unavailable or explain how the reviewing authority's actions made any specific procedure unavailable. Moreover, Plaintiff's own actions as to each of those grievances reflect that internal steps were available but Plaintiff failed to properly complete the steps before seeking relief in this Court.

Plaintiff's sparse and unsupported arguments are insufficient to establish a genuine question of fact as to whether the actions of the reviewing authority prevented Plaintiff from exhausting otherwise available administrative remedies. Because Plaintiff did not completely and properly follow the prescriptions of OP-090124 with regard to Grievance Nos. 13-202, 13-209, 13-210, or 13-219, Defendants are entitled to summary judgment on their nonexhaustion defense for the relevant underlying claims Plaintiff now seeks to bring in this lawsuit.

b.  Grievance No. 13-181

On September 16, 2013, Plaintiff sent to the CCF reviewing authority an Offender

Grievance Report Form on which Plaintiff wrote "Emergency and Sensitive" at the top.

Doc. No. 128-7 at 3.  The factual allegations therein largely relate to those presented in

Count II of the Amended Complaint and occurring on or around September 10, 2013.

*Compare id.* at 3-4, *with* Am. Compl. at 6, 9-10.  On the grievance form, Plaintiff

requested "to be seen by a hand & back specialist," "to be transferred from CCA/CCF,"

and to be paid money damages by Nurse Starnes and CCA.  Doc. No. 128-7 at 3.

The CCF reviewing authority received the grievance form on September 18, 2013,

and designated it as Grievance No. 13-181.  *See id.*  That same day, CCF's Grievance

Coordinator used a standardized form to return the grievance unanswered for several

reasons, including that the grievance was "[n]ot of a sensitive/emergency nature," and

instructed Plaintiff to "follow the standard grievance process."  *Id.* at 2.  Plaintiff

disagrees with at least two of the reasons provided for returning Grievance No. 13-181

unanswered.  *See* Pl.'s Resp. to Defs.' Mot. Summ. J. at 10, 15-16.  Plaintiff does not

dispute, however, that the option of seeking relief through the standard grievance process,

beginning with a Request to Staff, remained available to him, and he concedes that he did

not follow that course.  Further, Plaintiff does not dispute Defendants' contention that he

did not seek to appeal the reviewing authority's decision to the administrative review

authority.  *See* Defs.' Mot. Summ. J. at 24; Pl.'s Resp. to Defs.' Mot. Summ. J. at 10, 15-

16.  "Even if [Plaintiff] is correct in characterizing his grievance as an emergency, he still

would have had options open to him under the administrative process.  Thus, even if the

grievance had been improperly returned, that does not mean he could simply ignore authorities' determination that the grievance did not constitute an emergency and opt out of the grievance procedure." *Craft v. Null*, 543 F. App'x 778, 780 (10th Cir. 2013) (alterations and internal quotation marks omitted).

Thus, Plaintiff's efforts for Grievance No. 13-181 did not properly exhaust available administrative remedies for the relevant claims that he now seeks to bring in this lawsuit. To this extent, Defendants are entitled to summary judgment on their nonexhaustion defense.

c. Grievance Nos. 13-183, 13-197

In a Request to Staff dated September 6, 2013, and addressed to Lieutenant Battles, Plaintiff made complaints regarding his September 5, 2013 interaction with Lieutenant Battles, which is discussed in Count I of the Amended Complaint. *Compare* Doc. No. 128-7 at 18-19, *with* Am. Compl. at 6, 8. Specifically, Plaintiff stated that because he could be overheard by his cellmate, Mr. Burton, as well as by other inmates through the ventilation system, Plaintiff on September 5, 2013, told Lieutenant Battles that the two cellmates should be separated because Plaintiff did not like to be awakened at 4:00 a.m. when Mr. Burton's medications were delivered. Doc. No. 128-7 at 18-19.

In the Request to Staff, Plaintiff explained that the actual reason for his request to be separated from Mr. Burton was because "Burton was mast[u]rbating and I yelled at him, and he told me I don't run him and a[n] altercation took place, he assaulted me." *Id.* at 18; *see also id.* at 19 (asserting that the same events occurred on both September 4 and 5, 2013). Plaintiff complained that, by speaking to Plaintiff at his cell, Lieutenant Battles

failed to "provide [Plaintiff] with a safe opportunity to resolve [his] issue without being label[]ed a *snitch*." *Id.* at 19. Plaintiff disagreed with Lieutenant Battles' alleged refusal to separate the two cellmates "unless there's a fight" and his alleged threat to spray mace on the two "when [he] saw Burton square up with [Plaintiff]." *See id.* Plaintiff also complained about Mr. Burton's initial placement in Plaintiff's cell, asserting that, according to a mental health unit staff member, "Burton was to be in a cell by himself." *Id.* Plaintiff requested the following action:

> Please give disposition. I will not accept cellmates as long as I'm at CCA/CCF. Any answer is fine. I would like to start my grievance process and take this continuous issue to the federal court. I let Burton move in[;] I don't know him – but I do not like rapist[s] or predatory behavior and should not be force[d] to deal with it or any other person under these circumstances.

*Id.* at 18.

> Lieutenant Battles responded on September 10, 2013:

> I did not say I would only move you if there was a fight. You have refused cellies several times & only want to cell alone. You refused to cuff up[;] that is why a show of force was utilized. Just yesterday you refused another celly proving once more you try to dict[]ate cell moves.

*Id.*

Dissatisfied with that response, Plaintiff submitted an Offender Grievance Report Form dated September 12, 2013, and addressed to Warden Miller, with the Request to Staff attached. *See* Doc. No. 128-7 at 16-20. On the form, Plaintiff disagreed with Lieutenant Battles' description of their September 5, 2013 interaction, asserting that Lieutenant Battles never offered Plaintiff the opportunity to be handcuffed. *Id.* at 16-17. Plaintiff also presented factual allegations beyond the scope of the September 6, 2013

Request to Staff. For instance, Plaintiff discussed various documents that he had submitted to Warden Miller regarding Lieutenant Battles' alleged conduct on September 5, 2013, and Plaintiff described being "set up" on September 10, 2013, as alleged in Count II of his Amended Complaint. *Id.* at 16-17. Plaintiff requested (1) to be transferred; and (2) to be monetarily compensated by CCA "for not properly training staff" and by various CCF staff members identified in Plaintiff's factual allegations. *Id.* at 16.

The grievance form was received on September 18, 2013, and designated as Grievance No. 13-183. *Id.* It was returned unanswered by CCF's Grievance Coordinator that same day, using a standardized form to identify the reasons for that action. *Id.* at 16, 15. Specifically, two reasons were identified: "10. Not an issue grievable to [ODOC] (Private prison property, misconduct (see OP-090124 [§ II.B.1], litigation pending, not within/under the authority/control of [ODOC], no remedy allowed by the department, etc.)"; and "11. More than 1 issue – only 1 issue allowed per grievance." *Id.* at 15. In a category labeled "Other," the Grievance Coordinator explained: "We do not give out monetary damages to offenders."[10] *Id.* Plaintiff was further advised that he would be permitted to resubmit the grievance correctly, if done within ten days of his receipt of the form that returned the grievance unanswered. *Id.*

---

[10] Plaintiff originally designated the grievance as "emergency and sensitive" but then marked through that language at the top of the form. *See* Doc. No. 128-7 at 16. When the grievance was returned unanswered, Plaintiff was advised through the "Other" category on the return form: "You are not to write on top of grievance then mark through it." *Id.* at 15.

Plaintiff then submitted an Offender Grievance Report Form dated September 26, 2013, and addressed to CCF's Grievance Coordinator. Doc. No. 128-8 at 4-5. Plaintiff again attached the September 6, 2013 Request to Staff and noted on the grievance form that he had previously submitted Grievance No. 13-183 on the same issue. *See id.* at 4-8. In describing the nature of his complaint, Plaintiff largely limited his factual allegations to the circumstances related to Mr. Burton and did not mention the September 10, 2013 "set up." *See id.* at 4-5. Plaintiff provided additional background information regarding Mr. Burton's placement in Plaintiff's cell and Lieutenant Battles' alleged conduct. *See id.* at 5.

Plaintiff also alleged that the Warden "knows about this because he came by the cell on Sept. 6, 2013 and was very upset cause what Lt. Battles had told him," asserting "the Warden should make sure that Lt. Battles is properly trained." *See id.* Plaintiff then concluded:

> The one issue I am grieving about is Lt. Battles['] response to separating me and Burton after we had fought[.] I was never able to tell him because he would not separate us and for fear of being labeled a *snitch*[.] I could not speak in the presence of seven (7) other inmates.

*Id.* Plaintiff again requested (1) to be transferred, and (2) to be monetarily compensated by CCA and by Lieutenant Battles. *Id.* at 4.

The grievance form was received on October 1, 2013, and this time designated as Grievance No. 13-197. *Id.* It was returned unanswered by CCF's Grievance Coordinator that same day, again using a standardized form. *Id.* at 3. As with Grievance No. 13-183, Grievance No. 13-197 was returned because: "10. Not an issue grievable to [ODOC]

(Private prison property, misconduct (see OP-090124 [§ II.B.1], litigation pending, not within/under the authority/control of [ODOC], no remedy allowed by the department, etc.)"; and "11. More than 1 issue – only 1 issue allowed per grievance." *Id.* In the "Other" category, the Grievance Coordinator stated: "This issue has already been addressed. Cimarron Correctional Facility does not give out money to offenders through the grievance process." *Id.*

Dissatisfied with that decision, Plaintiff submitted a Grievance Appeal Form to ODOC's administrative review authority on October 7, 2013, which was received on October 9, 2013. *See* Doc. No. 128-9 at 42-43. Plaintiff asserted that CCF's reviewing authority committed probable error in concluding that Plaintiff's issue was not grievable to ODOC, that he was grieving more than one issue, and that his issue had already been addressed. *Id.* at 42. In support, Plaintiff stated that he had "requested to be transferred and this was never addressed." *Id.* Plaintiff further stated:

> The grievance issue that I raised is one issue dealing with Lt. Battles['] refusal to separate me and inmate Burton after I had requested to be separated. He showed deliberate indifference to my health and safety when he did not do so, and CCA/CCF are maintaining a code of silence about Lt. Battles['] unprofessional, untrained and inexperienced response to the situations. Clearly, this is one issue that I have explained as the nature of my complaint. So there is only one specific issue. The review[ing] authority is using their authority under state law to deny me access to the grievance process.

*Id.*

On October 28, 2013, ODOC's administrative review authority used a standardized form to return the grievance appeal unanswered, identifying three reasons for that action: "4. Out of time from date of response to request to staff until filing of

grievance with facility head"; "10. Not an issue grievable to [ODOC] (Private prison property, misconduct (see OP-090124 [§ II.B.1], litigation pending, not within/under the authority/control of [ODOC], no remedy allowed by the department, etc.) NO REMEDY ALLOWED BY ODOC; MONETARY COMPENSATION" and "11. More than 1 issue – only 1 issue allowed per grievance." *Id.* at 35. The administrative review authority did not provide Plaintiff an opportunity to resubmit a corrected appeal. *See id.* Plaintiff received the form that returned his grievance appeal unanswered on October 30, 2013.

As to Grievance No. 13-183, Defendants assert that Plaintiff was "afforded the opportunity to resubmit" the grievance but "did not resubmit" and "did not appeal the facility's *return* decision to the Administrative Review Authority for [ODOC]." Defs.' Mot. Summ. J. at 25. This ignores that Plaintiff *did* resubmit the grievance as Grievance No. 13-197, cross-referencing Grievance No. 13-183 at that time. Doc. No. 128-8 at 4. In his response, Plaintiff argues that administrative remedies for Grievance No. 13-183 were not available to him at the facility level because he was led "to believe the grievance complaint was not a grievable matter to the [ODOC]" and because he was "denied . . . access to the grievance process."[11] Pl.'s Resp. to Defs.' Mot. Summ. J. at 17-18; *see also id.* at 20. Again, these assertions are not particularly relevant or persuasive here because

---

[11] Regarding this grievance and others, Plaintiff routinely asserts that "Defendants" took the alleged actions. *E.g.*, Pl.'s Resp. to Defs.' Mot. Summ. J. at 17-18. However, Plaintiff does not identify any Defendant who was involved in the challenged aspects of the remedy exhaustion process. *See id.* Neither CCF's Grievance Coordinators nor ODOC's staff members charged with addressing grievance appeals, i.e. those individuals who took procedural actions in the Grievance Process, are named as defendants in this action.

Plaintiff was permitted to resubmit the grievance and did so as Grievance No. 13-197. *See id.* at 11, 18.

As to Grievance No. 13-197, Defendants assert: "Plaintiff failed to follow the instructions provided to him. Plaintiff failed to properly and timely submit this grievance. Therefore, Plaintiff did not exhaust any issues with the filing of Grievance [N]o. 13-197." Defs.' Mot. Summ. J. at 27. In response, Plaintiff again asserts that administrative remedies for Grievance No. 13-197 were not available to him at the facility level because the CCF Grievance Coordinator selected "Reason Number 10"— "not a[n] issue grievable to ODOC." *See* Pl.'s Resp. to Defs.' Mot. Summ. J. at 11, 20; Doc. No. 128-8 at 3. Again, Plaintiff's limited argument is not persuasive because he had, and attempted to avail himself of, the further procedural option of an appeal to ODOC's administrative review authority. *See* Pl.'s Resp. to Defs.' Mot. Summ. J. at 18.

Regarding Plaintiff's appeal to the administrate review authority, Plaintiff disputes the validity of the reasons for which his appeal as to Grievance No. 13-197 was returned unanswered. Primarily, Plaintiff contends that, contrary to the administrative review authority's finding, the filing of his grievance was not out of time from the date of the response to the Request to Staff. Pl.'s Resp. to Defs.' Mot. Summ. J. at 18. Defendants rely on the administrative review authority's untimeliness finding to support their affirmative defense that Plaintiff did not properly exhaust his available administrative remedies through Grievance No. 13-197. *See* Defs.' Mot. Summ. J. at 27. Plaintiff contends that the record does not support an untimely submission because he was

permitted time to correct and resubmit Grievance No. 13-183, which he did as Grievance No. 13-197 and which he asserts was timely done.

When Grievance No. 13-183 was returned unanswered, Plaintiff was permitted to correct errors and resubmit the grievance "within 10 days of receipt of this form." Doc. No. 128-7 at 15; *see also* Pl.'s Resp. to Defs.' Mot. Summ. J. at 18; OP-090124 § V.A.7 ("If allowed, the offender must properly re-submit the grievance within ten calendar days of receipt."). The date that appears on the return form is September 18, 2013. Doc. No. 128-7 at 15. The record evidence for Grievance No. 13-183, however, does not provide the date on which Plaintiff received that return form. Plaintiff does not clearly address when he received the return form either. Instead, he focuses on when he "filed" Grievance No. 13-197 (the resubmission of Grievance No. 13-183), which he asserts was on September 26, 2013, and therefore within 10 days of September 18, 2013. *See* Pl.'s Resp. to Defs.' Mot. Summ. J. at 18; Doc. No. 128-7 at 15; Doc. No. 128-8 at 4.

Although Plaintiff dated Grievance No. 13-197 for September 26, 2013, it was not received by CCF's reviewing authority until October 1, 2013. Doc. No. 128-8 at 4. Under the Grievance Process, no mailbox rule applies, and, thus, a grievance "must be received in the appropriate office within the required time frame." OP-090124 § XII.E. October 1, 2013, was more than 10 calendar days after September 18, 2013. Thus, if Plaintiff received the form returning Grievance No. 13-183 on September 18, 2013, then the reviewing authority's October 1, 2013 receipt of Grievance No. 13-197 was untimely. However, if Plaintiff received the form on or after September 21, 2013, then the October 1, 2013 receipt of Grievance No. 13-197 was timely. Based on the summary judgment

30

record before the Court, the undersigned concludes that there is a genuine dispute as to when Plaintiff received the form returning Grievance No. 13-183 and, therefore, whether Grievance No. 13-197 was untimely submitted.

Second, Plaintiff, citing *Little v. Jones*, 607 F.3d at 1250, argues that the administrative review authority lacked the authority to return his appeal on the ground that it allegedly contained more than one issue. Pl.'s Resp. to Defs.' Mot. Summ. J. at 18-19. In *Little*, the Tenth Circuit addressed a version of ODOC's Grievance Process that predates the version applicable to Plaintiff's grievances. *See Little*, 607 F.3d at 1249-50. The applicable version of the Grievance Process expressly provides the administrative review authority with "the authority to return . . . grievance appeals unanswered when they contain more than one issue." OP-090124 § VII.B.1.e. Here, however, Plaintiff upon resubmission of his grievance appears to have narrowed the scope of the appeal to one issue. Thus, there is also, at least, a genuine dispute of fact as to whether the dispositive return of Plaintiff's appeal on this basis was a proper exercise of OP-090124.VII.B.1.e or an improper thwarting of Plaintiff's attempt to properly exhaust his available administrative remedies.

Relevant to the third reason the appeal was returned, Plaintiff argues that, "Some courts have held that if [the] plaintiff has been 'reliably informed by an administrator that no remedies are available' the plaintiff is not required to pursue the process any further." Pl.'s Resp. to Defs.' Mot. Summ. J. at 19 (quoting *Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005)). Plaintiff thus contends that, his own actions notwithstanding, he was not required to take any further action after Grievance No. 13-183 was returned unanswered

at the facility level as "not a[n] issue grievable to ODOC." *Id*. at 20. This argument is not directly material to the undersigned's analysis because Plaintiff's actions, including his submission and resubmission of Grievance No. 13-197, reflect that even he did not believe he had been *reliably* informed by CCF's reviewing authority that no remedies were available and that consequently the issue was not grievable. To be clear, however, a request for money damages is not among the enumerated "Non-grievable Issues" in the Grievance Process. *See* OP-090124 § II.B. The nongrievable nature of such a request appears to be derived from the requirement that a grievable issue be one "for which *a* remedy may be allowed by the department or by law." *See id.* § II.A.1 (emphasis added). Although a request for money damages may be a request for an impermissible remedy, it does not preclude the possibility that some other remedy ("a remedy") may be allowed. Thus, a request for money damages alone should not automatically render an issue nongrievable. To the extent that Plaintiff's appeal was dispositively returned on the basis that the underlying grievance, in part and among other remedies, requested money damages, there is a genuine dispute of fact as to whether that action was a proper exercise of OP-090124.VII.B.1.e or an improper thwarting of Plaintiff's attempt to properly exhaust his available administrative remedies.

In sum, the record evidence is such that a genuine question of material fact exists regarding whether Plaintiff exhausted all available administrative remedies in connection with the "one issue" he sought to raise in Grievance No. 13-197—i.e., the issue involving Lieutenant Battles' alleged refusal to separate Plaintiff from Mr. Burton, either temporarily for a private conversation or permanently, on September 5, 2013. Thus, in a

separate section below, the undersigned considers whether Plaintiff has established the merits of this Eighth Amendment claim against Lieutenant Battles.

d.  Grievance No. 13-185

In a Request to Staff dated September 5, 2013, and addressed to Warden Miller, Plaintiff complained regarding the placement of Mr. Burton in Plaintiff's cell by C.O. Miller on September 3, 2013; Plaintiff's issues with Mr. Burton on September 4 and 5, 2013; and Plaintiff's September 5, 2013 interaction with Lieutenant Battles—all of which are discussed in Count I of the Amended Complaint.  *Compare* Doc. No. 128-7 at 24-25, *with* Am. Compl. at 6, 8.  Plaintiff stated that he "want[ed] to be transferred" and that he would "not accept any[]more cellmates while at CCF."  Doc. No. 128-7 at 24.  In a response dated September 10, 2013, Warden Miller stated:

> After review, there is not any documentation to support you[r] wishing to be single-celled.  There are specific processes and procedure[s] that must be followed to [illegible] such a provision.  Regarding the placement of offender Burton into your cell, there is no documentation to indicate that you and he are separatees or have had previous issues.  With this being, I do not see any facts to support the assertion that your health and safety were put in danger, therefore, your request to be transfer[red] cannot be supported.

*Id.*[12]

Dissatisfied with that response, Plaintiff submitted an Offender Grievance Report Form dated September 11, 2013, and addressed to CCF's Grievance Coordinator, with the Request to Staff attached.  *Id.* at 22-26.  On the form, Plaintiff asserted that Warden

---

[12] Defendants state, and Plaintiff does not dispute, that the response was provided by Warden Miller.  Defs.' Mot. Summ. J. at 26; *see* Pl.'s Resp. to Defs.' Mot. Summ. J. at 20-21.

Miller's response did "not deal with anything I mentioned – I *never* requested a single cell." *Id.* at 22. Plaintiff reiterated the factual allegations from the Request to Staff and presented new factual allegations. For instance, Plaintiff mentioned the "set up" on September 10, 2013, as described in Count II of his Amended Complaint. *Id.* at 23. Plaintiff requested that Warden Miller resign and pay monetary damages to Plaintiff. *Id.* at 22. Plaintiff also requested "[t]o be transferred immediately." *Id.*

The grievance form was received on September 20, 2013, and designated as Grievance No. 13-185. *Id.* It was returned unanswered by CCF's Grievance Coordinator on September 23, 2013, using a standardized form to identify the reasons for that action. *Id.* at 21. Specifically, three reasons were identified: "10. Not an issue grievable to [ODOC] (Private prison property, misconduct, litigation pending, not within/under the authority/control of [ODOC], no remedy allowed by the department, etc.)"; "11. More than 1 issue – only 1 issue allowed per grievance"; and "13. Requests for disciplinary action against staff will not be addressed in the grievance process." *Id.* (citation omitted). In a category labeled "Other," the Grievance Coordinator explained: "Cimarron does not give out monetary damages to offenders." *Id.*

Dissatisfied with that decision, Plaintiff submitted a Grievance Appeal Form to ODOC's administrative review authority on September 26, 2013, which was received on October 4, 2013. *See* Doc. No. 128-9 at 33-34. Plaintiff asserted that CCF's reviewing authority committed probable error because Warden Miller "did not deal with the issues raised in the [Request to Staff]" and because "the grievance was only one issue." *Id.* at 33. Plaintiff then provided a summary of his allegations, including those that were

beyond the scope of the underlying September 5, 2013 Request to Staff. *Id.* Then, to support his contention that he was only presenting one issue as to all of the circumstances he described, Plaintiff asserted, "My one issue is maintaining a code of silence concerning staff misconduct." *See id.*

Defendants assert that Plaintiff's "appeal was returned to him unprocessed, along with a warning letter that told him continued submissions of grievances with procedural errors would result in the Plaintiff being placed on grievance restriction. Plaintiff did not resubmit the grievance appeal." Defs.' Mot. Summ. J. at 26; *see also id.* at 13 (alleging same in "Statement of Uncontroverted Facts"); Doc. No. 128-9 at 26 (October 24, 2013 warning letter); OP-090124 § VII.B.1.e (permitting one opportunity to correct errors in appeal).

Construing his statements together, Plaintiff asserts that any failure to exhaust administrative remedies for Grievance No. 13-185 should be excused based upon CCF's Grievance Coordinator's actions. *See* Pl.'s Resp. to Defs.' Mot. Summ. J. at 10, 21. Plaintiff asserts that because Grievance No. 13-185 was returned unanswered based (in part) upon "Reason Number 10"—"not a grievable issue to the [ODOC]"—"the grievance process [was] made unavailable." *Id.* at 10; *see also id.* at 21. Plaintiff also asserts that the CCF Grievance Coordinator did not inform Plaintiff regarding "how the grievance was defect[ive], when the grievance outlined one incident and how Lt. Battles responded to my request to be separated from inmate Burton." *Id.* at 21.

Plaintiff does not specifically address the appeals process and does not dispute that he did not resubmit his appeal regarding Grievance No. 13-185, although the Grievance

Process permits correction and resubmission of a returned appeal once as a matter of course. *See id.* at 10, 20-21; OP-090124 § VII.B.1.e. Further, Plaintiff does not argue that the procedure for appealing the reviewing authority's decision was unavailable to him or explain how the reviewing authority's actions described above made the procedure itself unavailable. *See* Pl.'s Resp. to Defs.' Mot. Summ. J. at 10, 20-21. Indeed, Plaintiff's own actions indicate that the appeal procedure was available.

In the context of discussing the CCF Grievance Coordinator's actions, Plaintiff concludes, "There was no further need to appeal when a remedy was not available." *Id.* at 21. When Grievance No. 13-185 was returned to Plaintiff unanswered, the "Other" statement on the form—"Cimarron does not give out monetary damages to offenders"— was sufficient to advise Plaintiff that his grievance had been returned unanswered, at least in part, based upon his request for money damages. *See* Doc. No. 128-7 at 21. Even if Plaintiff reasonably believed, from the list of possible reasons on the form, that his grievance presented no grievable issue because there was "no remedy allowed by the department," Plaintiff presents no argument to explain why ODOC's administrative review authority, i.e., the department itself, should have no opportunity to address on appeal whether the reviewing authority had correctly concluded that no remedy was available. When he appealed Grievance No. 13-185, Plaintiff did not assert that CCF's reviewing authority had erred by concluding that the grievance presented no grievable issue. Yet, as evidenced from the bases for his appeal, it is clear that Plaintiff believed some remedy to be available, including a remedy by which Warden Miller would be

required to respond to Plaintiff's Request to Staff in a manner that more fully addressed Plaintiff's complaints. *See* Doc. No. 128-9 at 33.

In sum, Plaintiff does not dispute Defendants' supported contention that he failed to complete available procedures in the exhaustion process before filing this lawsuit. With respect to Grievance No. 13-185, Plaintiff's sparse and unsupported arguments are insufficient to establish a genuine question of fact as to whether the actions of CCF's Grievance Coordinator prevented Plaintiff from exhausting otherwise available administrative remedies. Thus, Plaintiff's efforts for Grievance No. 13-185 did not properly exhaust available administrative remedies for the relevant claims that he now seeks to bring in this lawsuit. To this extent, Defendants are entitled to summary judgment on their nonexhaustion defense.

### 4. Conclusion Regarding the Affirmative Defense of Nonexhaustion

For the foregoing reasons, Defendants are entitled to summary judgment on all of Plaintiff's claims except that grieved through Grievance No. 13-197. As to that claim, because there is a genuine dispute of material fact as to whether Plaintiff exhausted administrative remedies, Defendants' affirmative defense of nonexhaustion is not established as a matter of law.

### D. Whether Defendants Are Entitled to Summary Judgment on the Merits of Plaintiff's Remaining Claim

As discussed above, genuine issues of material fact preclude summary judgment for Defendants on the basis of nonexhaustion only as to Plaintiff's claim against Lieutenant Battles regarding their interaction on September 5, 2013, as alleged in Count I

of the Amended Complaint. Thus, the undersigned proceeds to consider whether Defendants are entitled to summary judgment on the merits of that claim.

Plaintiff asserts that Lieutenant Battles violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment on September 5, 2013, by exhibiting deliberate indifference to Plaintiff's health and safety. Am. Compl. at 6, 8. Specifically, Plaintiff alleges that this violation occurred when Lieutenant Battles failed to separate Plaintiff and Mr. Burton (1) to enable Plaintiff to speak freely regarding his request to be separated, and (2) despite witnessing Mr. Burton "jump off his top bunk and square off with [Plaintiff]." *See id.*

To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show a violation of a right secured by the Constitution or laws of the United States, and that the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Phillips v. Tiona*, 508 F. App'x 737, 750 (10th Cir. 2013) ("We have long assumed that employees of a private prison act under color of state law for purposes of § 1983 suits by inmates . . . ."). As its prohibition against cruel and unusual punishment is interpreted, the Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement . . . [by] ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care" and "tak[ing] reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks omitted); *see also Rhodes v. Chapman*, 452 U.S. 337, 344-45 (1981) (noting applicability of Eighth Amendment to states through Fourteenth Amendment).

To succeed specifically on a claim that one's Eighth Amendment rights were violated, a plaintiff must establish an objective component and a subjective component. As to the objective component, the plaintiff must establish that the condition was "'sufficiently serious' to implicate constitutional rights"—one that objectively "'pos[ed] a substantial risk of serious harm' to inmate health or safety." *DeSpain v. Uphoff*, 264 F.3d 965, 971, 973 (10th Cir. 2001) (quoting *Farmer*, 511 U.S. at 834). As to the subjective component, the plaintiff must establish that the defendant exhibited deliberate indifference to this risk, i.e., that the defendant knew of and disregarded the "excessive risk to inmate health or safety." *See Farmer*, 511 U.S. at 834-37; *see also DeSpain*, 264 F.3d at 971-72.

Assuming without deciding that Plaintiff could establish the objective component of an Eighth Amendment claim, Plaintiff has not put forth sufficient evidence to establish the subjective component of such a claim. Particularly, Plaintiff does not establish that Lieutenant Battles had actual knowledge of and disregarded a serious risk posed by Mr. Burton to Plaintiff's health or safety at the specific times of the decisions underlying Plaintiff's claims. *See Farmer*, 511 U.S. at 834-37.

When requesting to be separated on September 5, 2013, Plaintiff did not report any physical altercations between himself and Mr. Burton to Lieutenant Battles. *See* Am. Compl. at 6. Plaintiff states that in support of his request for separation from Mr. Burton, he told Lieutenant Battles, "we are not compatible" and "I don't like waking up at 4:00 AM when [the] nurse comes." *Id.* Plaintiff states that, "for fear of being label[]ed a snitch," he could not report Mr. Burton's conduct to Lieutenant Battles—both because

Mr. Burton was present and because prisoners in other cells might overhear the conversation through the connecting ventilation system. *Id.* at 6, 8; *see also* Pl.'s Resp. to Defs.' Mot. Summ. J. at 26.

Plaintiff states that, during their conversation: "Lt. Battles saw inmate Burton jump off his top bunk and square off with me, as if ready to fight, took out his mace can and started shaking it up." Am. Compl. at 8. Plaintiff alleges that he then "again asked to be separated, and Lt. Battles said unless there's going to be a fight, I'm not doing anything [and] started laughing when [Plaintiff] said you want to see us fight." *Id.* Plaintiff alleges that Lieutenant Battles threatened to use his mace on the two cellmates if a fight occurred and then "walked away from the cell." *Id.*; *see also* Pl.'s Resp. to Defs.' Mot. Summ. J. at 27.

Thus, on September 5, 2013, Lieutenant Battles is alleged to have known only that Plaintiff and Mr. Burton were incompatible and that Plaintiff did not like to be awakened early in connection with a nurse's visit to the cell. Lieutenant Battles is also alleged to have witnessed behavior by Mr. Burton that was threatening but that involved no physical contact. Lieutenant Battles is alleged to have then responded by threatening to use mace to discourage the two cellmates from physically engaging with each other. Plaintiff does not allege, for instance, that he had any visible physical injuries that would have alerted Lieutenant Battles to the possibility of a prior physical altercation between the two cellmates, and Plaintiff readily admits that he did not report any such altercation to Lieutenant Battles during their conversation.

Even fully crediting Plaintiff's allegations, there is insufficient support for one to reasonably infer that Lieutenant Battles knew—from Plaintiff's noted complaints, from Mr. Burton's conduct, or otherwise—of any serious risk to Plaintiff's health and safety or that by threatening to use mace rather than separating the two cellmates, Lieutenant Battles recklessly disregarded any such risk. Put another way, Plaintiff fails to establish that Lieutenant Battles' response to the situation was not a reasonable measure to monitor and guarantee the safety of Plaintiff and Mr. Burton in light of the information he had at the time. *See Farmer*, 511 U.S. at 832.

Later on the same day as his conversation with Lieutenant Battles, Plaintiff wrote a Request to Staff to Warden Miller to present the full reasons for Plaintiff's request to be separated from Mr. Burton.[13] *See* Doc. No. 128-7 at 24-25. Then, the next day, Plaintiff wrote a substantively similar Request to Staff to Lieutenant Battles. *See* Doc. No. 128-7 at 18-19. Whether in connection with Plaintiff's written complaints or not, Mr. Burton was removed from Plaintiff's cell on September 6, 2013, *see* Pl.'s Resp. to Defs.' Mot. Summ. J. at 28, only one day after Plaintiff's conversation with Lieutenant Battles. At least one filing, a document from a CCF investigation filed by Defendants and cited by Plaintiff, reflects that Plaintiff has previously stated that Lieutenant Battles was the

---

[13] Even then, Plaintiff did not provide many details regarding the alleged physical altercation. *See* Doc. No. 128-7 at 24-25. Plaintiff does not appear to have reported any alleged injuries until five days later, on September 10, 2013. *See* Defs.' Mot. Summ. J. Ex. 12, Doc. No. 128-14, at 2 (Request for Health Services dated by Plaintiff September 6, 2013, but received by staff on September 10, 2013, regarding "altercation, where [Plaintiff] was attacked on 9.5.13 and hit in the left ear" by "his *ex-cellmate*"); *see also* Am. Compl. at 6 (reflecting that "sick call slip" was "picked up" from Plaintiff on September 10, 2013, after which Plaintiff's ear was examined).

person who removed Mr. Burton from the cell on September 6, 2013. See Defs.' Mot. Summ. J. Ex. 9, Doc. No. 128-11, at 3; Pl.'s Resp. to Defs.' Mot. Summ. J. at 26-27.

Aside from indicating that CCF personnel took appropriate action at the time they learned of a more serious risk, these undisputed facts undermine Plaintiff's allegation that he was entirely unable to communicate the true nature of any danger to his health and safety. Plaintiff presents no allegation that his writings to Warden Miller or Lieutenant Battles risked Plaintiff's safety—i.e., through being designated as a "snitch" by other inmates—or that he could not have presented his request for separation initially in writing. *See* Doc. No. 128-7 at 25 (noting that Mr. Burton was in the cell while Plaintiff was writing the September 5, 2013 Request to Staff). Plaintiff's actions contradict his suggestion that the only reasonable measure to protect Plaintiff's safety would have been for Lieutenant Battles to remove Plaintiff from the cell for a private conversation. *See Farmer*, 511 U.S. at 832.

Plaintiff contends that his discovery efforts as to this claim have been hindered by Defendants and that summary judgment should be precluded on this basis. Pl.'s Resp. to Defs.' Mot. Summ. J. at 28 (referencing Fed. R. Civ. P. 56(d)). Plaintiff alleges that Defendants will not provide Mr. Burton's mental health records and also will not provide video of Plaintiff's interaction with Lieutenant Battles on September 5, 2013.[14] *Id.* Such evidence would not assist Plaintiff in establishing his Eighth Amendment claim against

---

[14] Particularly, Plaintiff seeks video to establish alleged falsehoods in Lieutenant Battles' response to Plaintiff's September 6, 2013 Request to Staff, including to show that Lieutenant Battles "did not open the food slot (bean hole) to afford Plaintiff an opportunity to cuff up had he asked." *See* Pl.'s Resp. to Defs.' Mot. Summ. J. at 27.

Lieutenant Battles because, as detailed above, Plaintiff's fully-credited version of events is insufficient to establish an Eighth Amendment violation. Further, Plaintiff does not clearly allege that Lieutenant Battles had any knowledge of Mr. Burton's alleged mental health or behavioral issues. *See* Am. Compl. at 6, 8. Even if such were alleged, Plaintiff does not explain how Mr. Burton being under "mental health observation" or on "suicide watch" or masturbating presented a serious risk to Plaintiff's health. Those circumstances, while disruptive or unpleasant to Plaintiff, do not inherently present such a risk. Thus, the undersigned does not find that summary judgment on this claim should be precluded based upon any ongoing discovery issues between the parties or any inability of Plaintiff to present "facts essential to justify [his] opposition" to Defendants' Motion. Fed. R. Civ. P. 56(d).

In sum, considering the undisputed facts and drawing all reasonable inferences from the record in the light most favorable to Plaintiff as the nonmoving party, Plaintiff has failed to establish the subjective component of his Eighth Amendment claim against Lieutenant Battles. Accordingly, Defendants are entitled to summary judgment on that claim.

### E. Whether the Court Should Exercise Supplemental Jurisdiction over Plaintiff's State Law Claims

In Count IV, Plaintiff asserts assault and battery claims under state law, which he seeks to bring as criminal charges. *See* Am. Compl. at 13-14 (citing Okla. Stat. tit. 21, §§ 641, 642). As an initial matter, Plaintiff has no private right of action under state law to bring such charges. *See* Okla. Stat. tit. 22, § 11. Thus, to the extent that Plaintiff is

alleging violations of state criminal law in this federal civil suit, his claims should be dismissed.

To the extent that Plaintiff is attempting to bring state-law tort claims for assault and battery against any Defendant in Count IV, the Court should decline to exercise supplemental jurisdiction over such state-law claims. Parties on both sides of this lawsuit are citizens of Oklahoma. Am. Compl. at 1-2, 3-4. Because Plaintiff's state-law claims do not implicate a federal question within the meaning of 28 U.S.C. § 1331 or a diversity of citizenship within the meaning of 28 U.S.C. § 1332, this Court does not have original jurisdiction over such claims. Therefore, if the Court adopts the undersigned's recommendations, disposing of Plaintiff's § 1983 claims in their entirety, any supplemental jurisdiction the Court may exercise over his state-law claims would be discretionary. *See* 28 U.S.C. § 1367(c)(3). The undersigned recommends that the Court decline to exercise such jurisdiction. *See Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

### F. *Whether the Court Should Grant Plaintiff's Other Requests for Relief*

#### 1. Plaintiff's Motion for Permissive Joinder (Doc. No. 92)

In August 2014, Plaintiff filed a "Motion for Permissive Joinder of Joseph Sebenick Pursuant to Federal Rule[s] of Civil Procedure . . . 18, 19 and 20." Pl.'s Mot. Joinder, Doc. No. 92. Plaintiff sought to join Mr. Sebenick, who is alleged to be employed as an internal affairs investigator at CCF, as a defendant and to bring additional

claims against Mr. Sebenick. *See* Pl.'s Mot. Joinder at 1-2. Plaintiff asserted that Mr. Sebenick maintained "a code of silence concerning the misconduct of [certain Defendants who are or were CCF staff members]" and has tolerated unspecified staff misconduct in his role as a supervisor. *See id.* at 2.

Because Plaintiff sought both to add additional factual allegations and to join a new defendant, his request implicates Federal Rules of Civil Procedure 15(a)(2) and 20(a)(2). Although a court "should freely give leave" under Rule 15(a)(2) to amend a pleading "when justice so requires," the Tenth Circuit has recognized that "where the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1366 (10th Cir. 1993). Individuals may be joined as defendants under Rule 20(a)(2) if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)-(B).

As outlined above, in September 2014 Plaintiff was granted leave to file an amended pleading, and he did so by submitting his Amended Complaint, which was filed on October 16, 2014. *See* Doc. Nos. 110, 122. Despite Plaintiff's earlier request to join Mr. Sebenick as a defendant, the Amended Complaint does not identify Mr. Sebenick as a defendant and contains no factual allegations against this individual. *See generally* Am. Compl. at 1-4, 5-17, 19-20. It therefore appears that Plaintiff chose not to continue to

seek relief against Mr. Sebenick in this action, as his Amended Complaint superseded his initial pleading, rendered that filing "without legal effect," and does not allege any facts that might state a cognizable claim against Mr. Sebenick. *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1180-81 (10th Cir. 2015) (internal quotation marks omitted).

Regardless, the Motion for Joinder reflects that Plaintiff "kn[ew] or should have known about the facts" relevant to any claims against Mr. Sebenick at the time Plaintiff initiated this lawsuit (and, certainly, by the time he filed the Amended Complaint), which counsels against allowing amendment. *See* Fed. R. Civ. P. 15(a)(2); *Frank*, 3 F.3d at 1366. And, most significantly, although any claims against Mr. Sebenick would "aris[e] out of the same" events as did the claims in the Amended Complaint, these new claims would be subject to denial for the same reasons as those claims raised against the current Defendants. *See supra*; Pl.'s Mot. Joinder at 1-5; Fed. R. Civ. P. 20(a)(2). Plaintiff's Motion for Joinder should be denied. *Cf. Hughes v. Sibbetts*, 77 F. App'x 487, 488 n.6 (10th Cir. 2003) ("We agree with the district court that [plaintiff's] Motion for Permissive Joinder of Plaintiff is now moot with the dismissal of his claims.").

2. Plaintiff's Motion for Preliminary Injunctive Relief (Doc. No. 97)

Plaintiff also has filed a Motion seeking a temporary restraining order and preliminary injunctive relief with regard to certain Defendants' handling of papers that Plaintiff is using in connection with this lawsuit. Pl.'s Mot. Prelim. Inj. (Doc. No. 97) at 1-8; *see also* Pl.'s Mot. Prelim. Inj. Exs. 1-14 (Doc. Nos. 97-1 to -14). Plaintiff alleges that these Defendants' failure to follow ODOC policy with respect to his legal papers has

prevented him from obtaining copies and has resulted in his legal papers being improperly read and discussed by Defendants.  Pl.'s Mot. Prelim. Inj. at 1-8.  Plaintiff requests that the Court prohibit Defendants' allegedly improper conduct and that he "be transferred [from CCF] immediately, since I have an approved transfer pending."  Pl.'s Mot. at 8.

As a threshold matter, Plaintiff's request is properly viewed as seeking a preliminary injunction under Federal Rule of Civil Procedure 65(a) rather than a temporary restraining order ("TRO") under Federal Rule of Civil Procedure 65(b).  Rule 65(b) generally contemplates that a TRO would be issued only for a short term and "without written or oral notice to the adverse party or its attorney."  *See* Fed. R. Civ. P. 65(b)(1).  Because Defendants here have had both notice and an opportunity to respond to Plaintiff's Motions, the undersigned treats Plaintiff's requests as collectively seeking a preliminary injunction.  *See* Pl.'s Mot. Prelim. Inj. at 8 (bearing certificate of service upon Defendants through their counsel); *see, e.g.*, *Farris v. Frazier*, No. CIV-12-1099-W, 2014 WL 3749142, at *15 (W.D. Okla. July 29, 2014), *aff'd*, 599 F. App'x 851 (10th Cir. 2015); *Kan. Hosp. Ass'n v. Whiteman*, 835 F. Supp. 1548, 1551 (D. Kan. 1993); *see also* 11A Charles Alan Wright et al., *Federal Practice and Procedure* § 2951, at 276-77 (3d ed. 2013).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  For entry of a preliminary injunction, the movant generally must satisfy four elements: (1) a substantial likelihood that he will prevail on

the merits; (2) irreparable harm unless the restraining order is issued; (3) outweighing of the harm from the threatened injury against the adversary's harm from the preliminary injunction; and (4) the absence of an adverse impact on the public interest. *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Id.* Although the Court will construe a pro se litigant's filings liberally, requests for relief must be supported, at a minimum, by factual allegations, which require no special legal training to provide. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991); Fed. R. Civ. P. 7(b)(1)(B).

A preliminary injunction grants intermediate relief of the same character as that which may be finally granted. *De Beers Consol. Mines, Ltd. v. United States*, 325 U.S. 212, 220 (1945). The Court may not enter a preliminary injunction when the movant seeks intermediate relief beyond the claims of the complaint. *See Stouffer v. Eulberg*, No. CIV-09-320-C, 2010 WL 567998, at *1, *2 & n.3 (W.D. Okla. Feb. 11, 2010) (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) ("[A] preliminary injunction may never issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action.")).[15]

---

[15] Other circuits are in accord. *See, e.g.*, *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005) ("[I]njunctive relief must relate in some fashion to the relief requested in the complaint."); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (denying a motion for temporary relief "based on new assertions of mistreatment that are entirely different from the claim raised and the relief requested" in the plaintiff's § 1983 lawsuit); *Stewart v. U.S. INS*, 762 F.2d 193, 199 (2d Cir. 1985) (holding that the district court lacked jurisdiction to issue preliminary injunction where movant had presented issues that were "entirely different from those [that] were alleged in his original complaint").

Thus, "the movant must establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Little*, 607 F.3d at 1251 (internal quotation marks omitted); *see also Penn v. San Juan Hosp., Inc.*, 528 F.2d 1181, 1185 (10th Cir. 1975) ("[The movant] must [establish his right to such relief] by clear proof that he will probably prevail when the merits are tried, so to this extent there is a relation between temporary and permanent relief.").

Plaintiff's Amended Complaint raises no claims relevant to these legal document issues and seeks no relief on those grounds, which are the only grounds raised in his request for a preliminary injunction. *Compare* Am. Compl. at 1-4, 5-17, 19-20, *with* Pl.'s Mot. Prelim. Inj. at 1-8. Plaintiff therefore has not shown the requisite relationship between Defendants' conduct as alleged in the Amended Complaint and the injury claimed in his Motion for a Preliminary Injunction. *See Little*, 607 F.3d at 1251. Thus, a preliminary injunction would be inappropriate to address these allegations, and the Court should deny the request for injunctive relief as presenting issues and seeking relief separate from and unrelated to the allegations of Plaintiff's Amended Complaint. *See, e.g., Farris*, 2014 WL 3749142, at *2, *15-16.

Further, at no point in this action has a Defendant been sanctioned by the Court due to any failure to provide copies of documents, and Plaintiff does not point to any specific harm to him inflicted by Defendants' actions in connection with this lawsuit. *See, e.g.*, Pl.'s Mot. Extension Time at 1 (Plaintiff seeking additional time to file amended complaint because Defendants denied him legal documents and screened his documents); Doc. No. 118 (order granting Plaintiff his requested extension). Moreover,

the primary relief sought in the Motion—transfer away from CCF—already has been obtained by Plaintiff, as Plaintiff is now housed at a different correctional facility. *See* Doc. No. 114. Plaintiff therefore has not shown "irreparable harm" absent the entry of injunctive relief, and his request also is therefore largely or entirely moot. *See Kikumura*, 242 F.3d at 955; *cf. McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001) (affirming dismissal of access-to-courts claim where plaintiff failed to allege sufficient facts to show "actual injury" that "hindered his efforts to pursue a legal claim" (internal quotation marks omitted)). Relief should be denied on this basis as well.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court: (1) dismiss all claims against Nurse Davis based upon Plaintiff's failure to serve that Defendant; (2) grant Defendants' Motion for Summary Judgment (Doc. No. 128); and (3) decline to exercise supplemental jurisdiction over Plaintiff's state-law claims. Upon adoption of those recommendations, the undersigned further recommends that the Court (1) deny Plaintiff's Motion for Permissive Joinder (Doc. No. 92); (2) deny Plaintiff's motion for preliminary injunctive relief (Doc. No. 97); and (3) deny Plaintiff's other pending motions as moot (Doc. Nos. 103, 104, 136, 145).

## NOTICE OF RIGHT TO OBJECT

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by October 23, 2015, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to

appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation terminates the referral in the present case.

ENTERED this 2nd day of October, 2015.

CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE